JUDSON E. FRIEND, in equity,

*vs.*

ABRAM G. GARCELON and others.

Penobscot.    Opinion January 5, 1885.

*Pension money.    Exemptions.    U. S. R. S., § 4747.*

By the statutes of the United States, the money due a pensioner is exempted from attachment or seizure upon legal process while it remains with the pension office or any officer or agent thereof, or is in course of transmission from such officer or agent to the pensioner, but not after the money has come to the pensioner's hands; when the money is actually in the possession of the pensioner the protection ceases.

ON REPORT.

Bill in equity.    Heard on bill and answer.

The bill seeks to obtain the collection of an execution against Abram G. Garcelon, out of the properties in the name of his wife and son-in-law, paid for in whole, or in part, by the money of Garcelon, received by him as pension money from the United States.    The question arose whether Garcelon could or not give away, or dispose of such money, as he pleased, as against those who were his creditors prior to obtaining the pension money.

It is alleged that a portion of the money went to pay an incumbrance on his wife's real estate, and a portion went to buy land deeded to a son-in-law, who holds the title in secret verbal trust for the pensioner.    If the pensioner could legally, as against such creditors, make such an appropriation of his pension money, the report provided that the bill should be dismissed with costs.    If not, the case was to go back for the settlement of the disputed facts.

*Davis and Bailey,* for the plaintiff, cited, *Spelman* v. *Aldrich,* 126 Mass. 117.

*A. J. Merrill,* for the defendants.

The statute provides that pension money "shall enure wholly to the benefit of such pensioner." He can get no "benefit" from it until he receives it and uses it. It is not a chose in action upon which he may create any liability or receive any benefit until the check comes to his hand. If exempt from attachment when it comes to the pensioner's hand, it will certainly follow that such money is exempt as long as its identity remains; and if exempt from attachment as long as the identity of the pension money remains, the pensioner may then dispose of it in such manner as he sees fit without prejudice to existing creditors. *Legro* v. *Lord*, 10 Maine, 161.

PETERS, C. J. The section of the R. S., U. S., (§ 4747) affecting the case is this : "No sum of money due or to become due to any pensioner, shall be liable to attachment, levy or seizure, by or under any legal or equitable process whatever, whether the same remains with the pension office or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall enure wholly to the benefit of such pensioner."

The question is, whether this provision furnishes any protection to or exemption of the money after it comes into the pensioner's hands? A careful examination inclines us to the conclusion that it does not. The meaning of the section seems to be that the protection is extended so long as the money remains in the pension office or its agencies, or is in course of transmission to the pensioner. It is money "due" or to "become due," and not money collected, that is protected by the law. By another provision of the federal statutes a pensioner is not allowed to pledge or sell any right or interest in his pension. The extent of all the interference of the government seems to be, to ensure the actual reception of its bounty by the person entitled to it. When the money is actually in the possession of the pensioner the protection is gone.

With the money in his hands as his own unencumbered property, the pensioner stands upon the same footing for its protection as would any other man. He may, no doubt, purchase

with his money any property which our state laws exempt from attachment, and hold it as such. Further than that the guardianship does not extend. He is accountable to his creditors precisely as any other debtor possessing money would be. The counsel for the defendants contend that it does not defraud a creditor for his debtor to give away property which the creditor cannot attach. There can be no doubt of that proposition. The answer is, that the money is exempted from attachment before it is received and not afterwards.

Nor would it be very practicable to extend a protection further than before indicated. Certainly, the money could not be protected in its transitions from property to property. The moment its identification is gone, the protection confessedly ceases. If the money goes into attachable real estate, such estate may be taken for the pensioner's debts. See *Knapp* v. *Beattie*, 70 Maine, 410. There would surely be some ground for saying that there might be an unfairness in extending the protection to the limit contended for. If the money be exempted against any debts, it would be against all attachments and all debts. And the pensioner may have obtained credit from the very fact of the possession of property acquired in this way.

There are decisions favoring our view of the question. The Iowa court has twice affirmed the same view. *Triplett* v. *Graham*, 58 Iowa, 136. In *Webb* v. *Holt*, 57 Iowa, 712, it was said that "the exemption applies only to money due the pensioner, while in course of transmission to him, and that there is no exemption after it comes into his possession." In *Jardain* v. *Fairton Saving Fund Ass'n*, 44 N. J. (Law) 376, the same conclusion was reached, where it is said by the court: "The fund is not placed in the hands of a pensioner as a trust, but it is to enure wholly to his benefit. When it comes to him in hand or personal control, it is his money as effectually and for all purposes as the proceeds of his work or labor would be, and whether he expends it in new contracts, or it be taken to pay the consideration due from him for those of the past, it equally enures to his benefit." In 126 Mass. 113 *(Spelman* v. *Aldrich)*, it was held that "even if, by the laws of the United States, the

pension was exempt from attachment while it remained in the form of a pension check, the exemption ceased after the money was drawn upon the check." *Cranz* v. *White*, 27 Kan. 319, is to the same effect. See S. C. 41 Amer. Rep. 408 and note. In 50 Vt. 612 (*Hayward* v. *Clark*), a case not directly calling for a decision of the question, a different view is intimated.

It follows that the bill may be sustained upon either of the grounds named in the report.

*Case to stand for hearing.*

DANFORTH, VIRGIN, EMERY, FOSTER and HASKELL, JJ., concurred.