EBEN ROZELLE v. M. C. RHODES, EXECUTOR.

ERROR TO THE COURT OF COMMON PLEAS OF LACKAWANNA COUNTY.

116 129
|125 136
:116 129
160 270|
116 129
e 31 SC 407

Argued February 21, 1887—Decided April 18, 1887.

1. Money received from the government by a pensioner of the United States and by him deposited in the hands of a bailee for safe-keeping, is subject to an attachment-execution.

2. Money put into the hands of another for safe-keeping, to be returned in the identical money left, is such a deposit of money as is subject to an attachment-execution under sections 22 and 35 of the act of June 16, 1836.

Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STER-
RETT and CLARK, JJ.; GREEN, J., absent.

No. 17 July Term 1886, Supt. Ct.; court below, No. 238
June Term 1885, C. P.

The case in the court below was an attachment-execution
by Mason C. Rhodes, executor of Sidney Bailey, deceased,
against Eben Rozelle, defendant, Isaac C. Tillinghast, garn-
ishee, based upon a judgment obtained upon a note, with war-
rant of attorney and waiving exemption, etc., as follows:—

$100                    FACTORYVILLE, Pa., Sept. 29, 1884.

One day after date I promise to pay Sidney Bailey or
bearer *out of my first pension money* the sum of One Hundred
dollars, with interest, etc.

The writ was issued May 2, 1885, and served upon the
garnishee May 2, 1885, and upon the defendant May 19,
1885; June 8, 1885, interrogatories, and rule upon the
garnishee to answer on or before August 1, 1885. June 27,
1885, a special plea was filled as follows:—

And now, June 27, A. D. 1885, the defendant, by his
attorney, R. H. Holgate, says that he has no money, goods,
effects or merchandise in the hands of I. F. Tillinghast, the
above named garnishee, except the sum of $800, which the
said defendant received from the United States government as
a pension for the loss of his son, while in the military service
of the United States, during the war of the Rebellion.   That
this money is the identical money so received, and that the
said money is in the hands of the above named garnishee for
safe keeping only.   That it is not a pledge, pawn, loan or
deposit, and the said I. F. Tillinghast took the same, not
under agreement to repay the same in kind, or in gold,
or in silver, or legal tender of like amount, but to return the
identical money, cash, bank notes, or other legal tenders left
in his custody, and as such it is not attachable.—

On July 8, 1885, the widow, son and daughter of Sidney
Bailey (then deceased) called on the defendant at the gar-
nishee's place of business, and upon their representation that
any moneys paid to them or any of them would be applied
upon the judgment their father had obtained, the defendant
paid to the daughter the full amount of the note and interest.

September 30, 1885, the garnishee's answers to the inter-rogataries were filed, the fourth of which was: "Yes; I had the sum of $800, belonging to Eben Rozelle, which was in my hands for safe keeping only, it being the identical money paid him on a pension claim by the government of the United States, for the loss of his son while in the military service of the United States, during the war of the Rebellion," and on the same day on motion of plaintiff's attorneys rule to show cause why judgment should not be entered against the garnishee on his answers. On January 6, 1886, the plaintiff, at the suggestion of the court at the hearing on the rule, demurred to the plea filed, and on the same day the defendant, without leave, pleaded "*nil debit,* payment."

On April 1, 1886, the court, ALFRED HAND, P. J., deliver-ing an opinion, ordered: "The rule in this case is made abso-lute, and the demurrer to the plea sustained, and judgment in the proper form as of a case of foreign attachment is directed to be entered against defendant and garnishee. An allowance of ten dollars is made to the garnishee to be taxed as costs as provided by act of Assembly."

The defendant then took this writ, assigning for error the action of the court in sustaining the demurrer and directing judgment to be entered against the defendant and the garnishee.

*Mr. R. H. Holgate* (with whom was *Mr. J. Alton Davis*), for the plaintiff in error :—

1. A special deposit of money for safe keeping to be returned identically as received, and not its equivalent in value, is not subject to attachment in the depositary's hands; §§ 22, 23, 35 of the act of June 16, 1836, P. L. 764.

Under the last two sections it has been decided that (1) goods left with a warehouseman, the depositor paying stor-age for the same monthly: Lennig's App., 9 W. N. 503; (2) horses and carriage left with livery keeper : Buckner v. Crois-sant, 3 Phila. 219; Hall v. Filter Mfg. Co., 10 Phila. 370; (3) contents of a safe in a safe-deposit company's vaults: Gregg v. Hilson, 8 Phila. 91; (4) goods deposited in a store; Good v. Obertauffer, 1 T. & H. Pr. § 1182, n. 10; are not liable to an attachment-execution in the hands of the deposi-tary; the reason assigned being that the goods must be

actually pawned or pledged for a debt or a liability of the defendant, or, that the bailee must have some other interest in the goods than a lien for their keeping.

For a like reason the clause "deposits of money" in the 22d and 35th sections of the act must be construed to mean a deposit where the depositary becomes the debtor of the depositor and can only be relieved from liability by repayment of the amount received. Any other construction would make a new contract of bailment.

2. The money in this case was not attachable: Rev. Stat. U. S. § 4747; Idem, 4745; Moore v. Marsh, 16 W. N. 239; Clark v. Ingraham, 15 Phila. 646; Blood v. Taylor, 2 Ch. Co. 493; Folschow v. Werner, 51 Wis. 85; Eckert v. McKee, 9 Bush 355; Burgett v. Fancher, 35 Hun 647; Stockwell v. Malone Bank, 36 Idem 583.

The following cases, frequently cited as establishing the contrary doctrine are not in point: Hudsall v. Clark, 2 Ch. Co. 492; Minnick v. McDonald, 1 Pa. C. C. 191; McCalla v. Brennan, 14 W. N. 513. Kellogg v. Waite, 12 Allen 530, quoted by the court below, ruled: "It seems that when this pension was paid to the agent who is now summoned as trustee, [prior to 1866] there was no provision of law to exempt it from attachment." Spellman v. Aldrich, 126 Mass. 113; Jardain v. Savings Fund Association, 44 N. J. (L) 376; Cranz v. White, 27 Kas. 319; Friend v. Garcelon, 77 Me. 25, are also distinguished.

*Mr. James E. Frear*, of *Harding & Frear*, for defendant in error:

There was no judgment entered in the court below.

When the case was argued below, the plea of *nil debit*, payment, was not entered of record or filed.

1. The demurrer admitted the facts set forth in the plea, but not the argument in it: Armstrong v. Allegheny County, 37 Penn. St. 280. The cases relied on by plaintiff in error, part 1 of his argument, are not in point, because they are cases of goods, and not of money, deposited.

A deposit is "a naked bailment of goods to be kept for the bailor without recompense, and to be returned when the bailor shall require it: Rap. & Law. L. D. 375.

2. The money deposited, though it had been received upon a pension certificate, is attachable: Elwyn's App., 67 Penn. St. 367; Friend v. Garcelon, 77 Me. 25; Triplet v. Graham, 58 Iowa 136; Webb v. Holt, 57 Idem 712; Jardain v. Savings Fund Association, 44 N. J. (L) 376; Spellman v. Aldrich, 126 Mass. 113; Cranz v. White, 27 Kas. 319; Kellogg v. Waite, 12 Allen 530.

The language of § 4747, Rev. St. U. S., limits its operation to the time when the money is received by the pensioner. Its character as pension money then ceases.

OPINION, MR. JUSTICE CLARK:

On the 1st day of May, 1885, Mason C. Rhodes, executor of the last will and testament of Sidney Bailey, deceased, entered a judgment in the Court of Common Pleas of Lackawanna county, against Eben Rozelle, for debt $100, with interest and costs; on the next day he issued an attachment-execution thereon, with clause of *scire facias*, to Isaac F. Tillinghast, garnishee. The writ was served on the defendant, and all debts, deposits, etc., due or owing the defendant in the hands of the garnishee, were levied and attached in satisfaction of the judgment.

On the 27th June, 1885, the defendant filed a special plea in substance as follows: That the defendant has no money, goods, effects, or merchandise in the hands of Tillinghast, the garnishee, except the sum of $800, which he received from the United States as a pension for the loss of his son, whilst in the military service of the government during the war of the Rebellion; that the money attached is the identical money so received, and that it is in the hands of the garnishee for safe keeping only; that it is not held by the garnishee as a pledge, pawn, loan, or deposit, to be returned in kind, or in gold, silver, or legal tender money of like amount, but in the identical money left in his custody. The defendant's contention is, first, that the money is not subject to seizure in any form of legal procedure; and, second, that if it is liable to be taken in execution for the defendant's debts in any form, it is not subject to seizure on an attachment-execution. The answer of the garnishee is to the same effect, and the questions for con-

sideration here are raised upon a rule against the garnishee on his answer and upon a demurrer to the defendant's plea.

The defendant, after issue joined on the demurrer, without leave added the pleas of *nil debet*, payment with leave, etc., but the cause was disposed of in the court below and argued here solely upon the demurrer.

Is the money subject to seizure for the debts of the defendant, under legal process in any form? Section 4747 of the Revised Statutes of the United States provides as follows: "No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure, by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer or agent thereof, but shall inure wholly to the benefit of such pensioner." The money which is exempted from legal seizure, under this section, it will be observed is particularly designated; it is "any sum of money due or to become due to any pensioner." This refers, of course, to money due or becoming due from the pension department; it is not pretended that the language of the statute can have any wider application than this. The further provision is, that such money shall not be liable to levy or seizure, under any process in law or equity, "whether it remains with the pension office, or any officer or agent thereof." It is very plain that the $800 in the hands of Tillinghast is not "money due or to become due" from the pension department; nor is it money which "remains in the pension office, or in the hands of any officer or agent thereof." It is money which sometime previous to the attachment had been paid to the pensioner, and which when paid to him "inured wholly to his benefit"; it was his money, he could dispose of it as he pleased. The exemption provided by the statute, upon any fair and reasonable construction, will only protect the fund whilst in course of transmission to the pensioner; after that, it is liable to seizure as other money. Some analogy was intended, we think, to the rule of law which prevails as to the fees and salaries of public officers, which as long as they maintain their distinctive character have always been held not liable to be taken by creditors under any form of process, by levy, sale, attachment, or sequestration: Davis v. Duke of Marlborough, 1 Swan. 79; Rundle v. Scheets,

2 Miles 330; Hutchinson v. Gormley, 48 Penn. St. 270. There-
fore in Elwyn's Appeal, 67 Penn. St. 367, the half pay of an
officer of the government was held not to be liable to seizure
by creditors; but when it had actually reached the beneficiary,
and had lost its distinctive character, when as money it was
in a proper sense a distributable fund, lying in the hands of
the law, it was held to be governed by the direction of the law.

The precise question, it is true, is one of first impression in
Pennsylvania; no case has been brought to our notice which
rules it. In Friend in Equity v. Garcelon, 77 Me. 25, how-
ever, the exact question has been fully considered and decided.
Chief Justice PETERS, of the Supreme Judicial Court, in passing
upon this point, says: " The question is, whether this provision
furnishes any protection to, or exemption of, the money, after
it comes into the pensioner's hands. A careful examination
inclines us to the conclusion that it does not. The meaning
of the section seems to be that the protection is extended, so
long as the money remains in the pension office, or its agencies,
or is in course of transmission to the pensioner; it is money
due, or to become due, that is protected by the law:" Spell-
man v. Aldrick, 126 Mass. 113; Cavenaugh v. Smith, 84 Ind.
380; Faurote v. Carr (Ind.), 6 West. Rep. 281; Jardain v.
Trenton Saving Fund Association, 44 N. J. 376; and Cranz v.
White, 27 Kas. 319, although differing in some respects from
the facts of this case, are substantially to the same effect.

But, assuming that the money was liable to seizure to
satisfy the defendant's debts, was it the proper subject of an
attachment-execution, so that Tillinghast might be charged as
a garnishee? It is contended that " deposits of money," in
the 22d and 35th sections of the act of 16th June, 1836, must,
in analogy to the principle announced in Lennig's Appeal, 9
W. N. 503, be construed to be such as constitute the relation
of debtor and creditor between the depositary and the depos-
itor. In order to a complete understanding of this question, a
reference to the provisions of the act of 1836 becomes necessary.

Prior to 1836, the goods and chattels, lands and tenements
only, of the defendant, were liable to be taken in execution upon
a judgment. Stocks in incorporated companies held by him, it is
true, were made liable to seizure and sale under the act of 29th
March, 1819. With this exception, however, the general pro-

vision of the law was as stated. By the 22 section of the act of 1836, however, it is provided, that in addition to stocks owned by the defendant in any body corporate, "deposits of money, belonging to him, in any bank or with any person or body corporate or politic, and debts due to him shall be liable, like other goods and chattels, subject to all lawful claims, etc."; and, by the 23 section, "goods or chattels pawned or pledged by the defendant, as security for any debt or liability, or which have been demised, or in any manner delivered or bailed for a term," are declared to be "liable to *sale* upon execution, as aforesaid, subject nevertheless," etc. The 35th section of the same act provides, however, that in the case of a debt due to the defendant, or of a deposit of money made by him, or of goods and chattels pawned, pledged or demised, as aforesaid, the same may be attached and levied, in satisfaction of the judgment, in the manner allowed in the case of a foreign attachment; in which case, the writ shall contain a clause of *scire facias* to the garnishee, etc. See Wray v. Tammany, 13 Penn. St. 394; Gochenaur v. Hostetter, 18 Idem 414; Strauser's Ex'r v. Becker, 44 Idem 206.

Whilst, therefore, all the goods and chattels of the defendant, whether they have been previously "pawned, pledged or demised, as aforesaid," or not, are liable to seizure and sale on execution under a *fi. fa.*, it is only such goods and chattels as have been "pawned or pledged by the defendant, as a security for a debt or liability, or which have been demised or in some manner delivered or bailed for a term," that are liable to an attachment-execution; the party in whose possession the goods are must have such a title or interest therein, that they cannot be taken from him: Lennig's Appeal, 9 W. N. 503.

But there is no restriction in the 35th section to any particular kind or class of debts due, or deposits of money made by the defendant; that section applies in the most general terms to all debts and deposits; and whilst the 22d section provides that such debts and deposits shall be liable like other goods and chattels, the 35th section, as was said by Mr. Justice WOODWARD, in Reed v. Penrose, 36 Penn. St. 239, prescribes that the manner of levying and seizing all such credits and choses in action shall be like that allowed in foreign attachment.

It may be conceded, perhaps, that if the money which Rozelle deposited with Tillinghast had been in the view of the sheriff, and within his power, he might upon a *fieri facias* have taken of it to the amount of his writ; but the money it must be conceded was a deposit with Tillinghast, and even if liable to levy upon a *fi. fa.* it was also liable to an attachment in execution in his hands. In disposing of the rule and the demurrer, we must of course assume the truth of the facts which the defendant and the garnishee have set forth in the plea and answer respectively, but we are not bound to accept their legal conclusions. A deposit, properly so called, is a naked bailment, and exists where one of the contracting parties gives something to the other to keep, who is to do so gratuitously and obliges himself to return it *in individuo* when he shall be requested. When one deposits money with another for safe keeping, the latter to return, not the specific money, but an equal sum, the transaction is also called a deposit, but it is an irregular deposit: Bouv. 511. Now, the transaction between Rozelle and Tillinghast was undoubtedly a deposit of money, plain and simple ; the money was left with Tillinghast for safe keeping, to be returned, not in money of like amount, but "in the identical money deposited," and it is of no consequence that the garnishee in his answer, and the defendant in his plea, deny that it was a deposit, as by the admitted facts it was plainly nothing else.

It is true that a depositary is held to the exercise of ordinary care only, but when he becomes the depositary of a fund, he assumes that relation under the law as it exists, and thereby subjects himself to the chances that it may be attached in his hands for the depositor's debts; and if he thereby incur a larger measure of responsibility, it is but the legitimate consequence of his own voluntary act.

Upon a careful examination of the whole case, we find no error in this record, and

The judgment is affirmed.