## JOHN HOLMES v. ELIZABETH TALLADA.

ERROR TO THE COURT OF COMMON PLEAS OF BRADFORD COUNTY.

$\overline{125}$   $\overline{133}$
160   273

Argued March 21, 1889—Decided March 25, 1889.
[To be reported.]

1. Where a pensioner of the United States received a check for accrued pension, indorsed and gave it to his wife, who drew the money and applied it to the purchase of real estate, taking the title in her own name, said real estate is not liable to seizure and sale for the husband's debt.
2. Under § 4747 of the Rev. St., U. S., the pensioner may use the money received from his pension, for his own benefit and to secure the comfort of his family, in any manner he may see proper, free from the attacks of his creditors: Rozelle v. Rhodes, 116 Pa. 129, distinguished.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 139 January Term 1889, Sup. Ct.; court below, No. 504 September Term 1887, C. P.

On July 27, 1887, John Holmes brought ejectment against Elizabeth Tallada and Jackson Tallada, her husband, to recover a parcel of land in Monroe township containing 50 acres. Issue.

At the trial on November 20, 1888, Jackson Tallada, by leave of court, filed a disclaimer of title to the land in dispute. The plaintiff then introduced testimony which showed that Jackson Tallada was indebted to John Holmes, the plaintiff, evidenced by a judgment which on November 29, 1884, was revived for $386.60. On April 25, 1885, a check for $1,642.60 was issued by a pension agent payable for accrued pension to Tallada as a soldier disabled in the service of the United States. Tallada indorsed the check and gave it to his wife Elizabeth, who drew the money payable thereon and immediately paid $1,200 thereof to Judson S. Blackman for the land in dispute, and had the conveyance therefor made to herself and the children of Jackson Tallada.

On May 18, 1885, Holmes issued execution upon his judg-

ment referred to, and, finding no personal property belonging to the defendant therein, caused a levy to be made upon the land in dispute then occupied by Tallada, his wife and family, when Mrs. Tallada gave notice of her title.   On September 3, 1885, the property was sold upon said writ and purchased for $10 by the plaintiff, who, receiving the sheriff's deed therefor, subsequently brought this suit.

At the close of the plaintiff's testimony, on motion of defendants' attorneys, the court, WILSON, P. J., entered a judgment of compulsory nonsuit, with leave, etc.   Same day, motion, rule, etc.

On November 23, 1888, after argument, the court discharged the rule to show cause why the judgment of nonsuit should not be vacated, and refused the plaintiff's motion, whereupon the plaintiff took this writ, assigning as error the order entering the judgment of nonsuit and the refusal of the plaintiff' motion to vacate said judgment.

*Mr. James Wood*, for the plaintiff in error:

Rozelle v. Rhodes, 116 Pa. 135, and the cases therein cited, ought to rule this case.   But the learned judge of the court below held that the pension check was not money within the meaning of § 4747 of the Rev. St., U. S., and that Tallada, by giving the check to his wife and allowing her to draw the money and purchase property therewith, in the name of herself and the children of her husband, put it beyond the reach of his creditors.   In the case cited, it does appear that the pensioner had converted the check into money before he made the deposit in the hands of Tillinghast.   But in Spellman v. Aldrich, 126 Mass. 113, the pensioner had not converted the check into money, and it was held that the amount of the check deposited to the credit of his wife remained the property of the pensioner and was liable to attachment for his debt.

*Mr. D. C. De Witt*, for the defendant in error:

There are two questions yet undecided by the Supreme Court of Pennsylvania in respect of pension money.   One question is, whether pension money in the pocket of the pensioner can be reached by process under the act of July 12, 1842, P. L. 339, and the other is the question raised in this

case. There are cases in our reports which are somewhat analogous and are commented upon in Rozelle v. Rhodes, 116 Pa. 129, among which are Rundle v. Scheetz, 2 Miles 330; Hutchinson v. Gormley, 48 Pa. 270; Elwyn's App., 67 Pa. 367. The reasoning in the last case seems to be applicable in this. In Hayward v. Clark, 50 Vt. 612, "the defendant received a pension check and gave it to his wife, who, by his advice, passed it to a third person and took his note therefor, and it was held that this note did not render him liable as on a note payable and delivered to the husband." In Clark v. Ingraham, 15 Phila. 646, the very question now raised was decided by WILLIAMS, P. J., and this decision was before us when we advised Tallada what to do in this case. As long as Tallada kept the pension check, his creditors could not touch it. If he had burned it they could have done nothing. Then why could he not give it to a stranger or his wife?

OPINION, MR. CHIEF JUSTICE PAXSON:

It is not disputed that the money with which the defendant, Elizabeth Tallada, purchased the real estate in controversy, was given to her by her husband, Jackson Tallada, and that at the time of such gift he was indebted to the plaintiff. Jackson Tallada received a check of $1,642.60, for accrued pension, in April, 1885; he indorsed this check and gave it to his wife, who drew the money and applied it to the purchase of the real estate in controversy, taking the title in her own name. The precise question raised by this record is whether said real estate is liable to seizure for her husband's debt. In an ordinary case such a gift by the husband to his wife would not be good as against existing creditors of the former. Section 4747 of the pension laws of the United States provides that "No sum of money due, or to become due to any pensioner, shall be liable to attachment, levy, or seizure by or under any legal or equitable process, whatever, whether the same remains with the pension office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner." This act not only protects the pension money from attachment while on its way to the pensioner, but it goes further, and declares that it "shall inure wholly to the benefit of such pensioner."

We need not discuss the question whether property purchased by a pensioner with the pension money, and held in his own name, would be liable to execution for his debts. No such question is before us. What we are called upon to decide is, whether it was a fraud upon creditors for Jackson Tallada to give this money to his wife for the purpose of purchasing a home for their joint benefit. In Rozelle v. Rhodes, 116 Pa. 129, the pensioner had deposited the pension money with a bailee for safe keeping, and it was held that it could be attached in the hands of the bailee. So here, if Jackson Tallada had deposited this money in his own name in bank, it might, under the authority cited, have been liable to attachment. But the words in the act of congress, "shall inure to his own benefit," mean something. We think the rational interpretation of this language is, that the pensioner may use the money in any manner he may see proper, for his own benefit and to secure the comfort of his family, free from attacks of creditors. The money cannot be attached in transit from the government to him, and when once in his own possession, I apprehend he could not be proceeded against under the act of 1842, for refusing to apply it to the payment of his debts. In his hands it was not liable to seizure, and the gift of it to his wife was not a fraud upon creditors. This privilege is a right which the government has given him in recognition of his services in its defence.

Judgment affirmed.