# R. L. Aubrey *v.* Sarah J. McIntosh and J. B. Swogger, Appellants.

*Pension laws—Exemption—Land purchased with pension money.*

Land purchased with pension money the title to which was taken in the name of the pensioner is not exempt from the lien of judgment and execution obtained and issued against said pensioner.

Argued April 18, 1899. Appeal, No. 65, April T., 1899, by Sarah J. McIntosh, defendant, from judgment of C. P. Fayette Co., Dec. T., 1897, No. 339, on case stated in favor of plaintiff. Before RICE, P. J., BEAVER, ORLADY, SMITH, W. W. PORTER, W. D. PORTER and BEEBER, JJ. Affirmed. Opinion by RICE, P. J.

Case stated. Before REPPERT, J.

The facts sufficiently appear in the opinion of the court below.

September 5, 1882, Samuel B. G. Jobes conveyed to Sarah J. McIntosh, one of the defendants, the property in dispute. Said defendant was a pensioner of the United States, being the widow of a soldier, and the property was purchased with pension money transmitted to and received by her and retained in her possession for several months prior to the purchase. Two judgments were recovered against Sarah J. McIntosh in 1892, and one in 1896. Executions were issued on these judgments and levied upon the property in dispute and the property was sold August 28, 1897. The sheriff's deed to the purchaser was acknowledged and delivered September 8, 1897. The property was

purchased by R. L. Aubrey, the plaintiff in the executions, who brings this action to recover possession of the same, claiming title under the sheriff's deed. The defendants allege that the property having been purchased with the pension money of Sarah J. McIntosh is exempt from seizure and sale on execution under section 4747 of the Revised Statutes of the United States, which provides that : " No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure, by or under any legal or equitable process whatever, whether the same remains with the pension office, or any officer or agent thereof, but shall inure wholly to the benefit of such pensioner."

In Rozelle v. Rhodes, 116 Pa. 129, it is held that money received from the government by a pensioner of the United States and by him deposited in the hands of a bailee for safe-keeping, to be returned in the identical money deposited, is subject to an attachment execution. In discussing the section of the Revised Statutes above quoted Mr. Justice CLARK says : " The money which is exempted from legal seizure, under this section, it will be observed is particularly designated : it is, ' any sum of money due or to become due to any pensioner.' This refers, of course, to any money due or becoming due from the pension department ; it is not pretended that the language of the statute can have any wider application than this. The further provision is, that such money shall not be liable to levy or seizure, under any process in law or equity, ' whether it remains with the pension office, or any officer or agent thereof.' It is very plain that the $800 in the hands of Tillinghast is not ' money due or to become due ' from the pension department ; nor is it money which remains in the pension office, or in the hands of any officer or agent thereof : It is money which sometime previous to the attachment had been paid to the pensioner, and which when paid to him inured wholly to his benefit ; it was his money, he could dispose of it as he pleased. The exemption provided by the statute, upon any fair and reasonable construction, will only protect the fund whilst in course of transmission to the pensioner ; after that, it is liable to seizure as other money." And he regards this intention of the section as analogous to the rule of law protecting the fees and salaries of public officers from process so long as they maintain their distinctive character.

In Holmes v. Tallada, 125 Pa. 133, a pensioner received a check for accrued pension, indorsed and gave it to his wife, who drew the money and applied it to the purchase of real estate, taking the title in her own name. The question to be decided in that case, as stated in the opinion of Mr. Chief Justice PAXSON, was "whether it was a fraud upon creditors for Jackson Tallada to give this money to his wife for the purpose of purchasing a home for their joint benefit." It was held that the real estate so purchased was not liable for the debt of the husband contracted prior to the issue of the pension check. The chief justice expressly disclaims in his opinion the discussion of the question whether property purchased by a pensioner with pension money, and held in his own name, would be liable to execution for his debts. "No such question," he says, "is before us." He is equally careful to recognize and distinguish the case of Rozelle v. Rhodes, above referred to.

In the case of Reiff v. Mack, 160 Pa. 265, it was decided that an attachment execution will not lie against the proceeds of a pension check deposited by a pensioner with a bank for collection, and which the bank, after collection, placed to the pensioner's credit as a deposit. In a per curiam the court says: "According to the undisputed evidence the money attached was part of the proceeds of the pension check which defendant deposited with the garnishee bank for collection. It was subject to his check, and was in fact part of his pension money which, as cash, had not yet come in to his hands."

Nor are we unmindful of the very able and ingenious opinion of the lower court in this case, written by Judge ENDLICH, in which all the decisions bearing on this section are elaborately and fully reviewed and discussed. He regards the decision in Holmes v. Tallada as authorizing three inferences:

1. That congress may exempt the gratuity given by it to a pensioner, in his hands, from liability for his debts under the laws of this state.

2. That, by the language of its enactment, it has done so.

3. That, therefore, property acquired by means of pension money is exempt from levy and sale upon execution.

Applying these inferences to the facts of the case in hand the learned judge of the lower court reasons as follows:

The deposit of the pension check made the money paid upon

it the property of the bank. The bank received it. In return the bank became debtor to the defendant for that amount, that is the defendant became the holder of a claim upon the bank, a chose in action. In other words, in exchange for this money paid by the government of the United States as a pension to the defendant, the latter became the owner of another kind of property, viz: a credit with the bank which enabled him to draw upon it. This property therefore, being acquired with pension money and in the hands of the pensioner, was exempt from seizure for his debts.

While the Supreme Court sustained the lower court in dissolving the attachment, their action does not seem to be based on the reasoning of the court below. There is no indorsement of the conclusion of the lower court that property acquired by means of pension money is exempt from levy and sale upon execution. On the contrary, the reason assigned was that according to the undisputed evidence the money attached was part of the defendant's pension money which, as cash, had not yet come into his hands, a principle which is in entire harmony with the former rulings of the court.

In Holmes v. Tallada, above cited, Chief Justice PAXSON says that the rational inference of the words of the act of congress "shall inure to his own benefit," is that the pensioner may use the money in any manner he may see proper for his own benefit and to secure the comfort of his family, free from the attacks of creditors. Bearing in mind the facts of that case, we think the fair inference from the language of the chief justice is that any disposition—made by the pensioner of pension money is not in fraud of creditors and cannot be questioned. He may keep it in his pocket; he may invest it in real estate in the name of another; he may take any step that seems advisable to protect it from his creditors, and his action will not be fraudulent. He may take any of these precautions to the end that his pension "shall inure to his own benefit," and for that very reason, a pension being a voluntary payment by the government, such precautions are not in fraud of creditors. That, however, is very far from saying that if he purchases property with his pension money, taking and holding the title and possession in his own name and right, such property is exempt from levy and sale upon execution. When pension money re-

ceived by and in the possession of the pensioner is so applied, property purchased, title acquired, possession taken, it has inured wholly to the benefit of the pensioner within the meaning of the act of congress as that act is interpreted in Rozelle v. Rhodes, supra, and is subject to levy and sale on execution. We do not think such a construction of the act is hostile to the ruling of the Supreme Court in Holmes v. Tallada.

That credit shall not attach to such property is a hardship upon the honest owner, opens an easy door to fraud and invites dishonesty.

As we understand the interpretation of the act of congress by the Supreme Court the money exempt from legal seizure is money due or becoming due the pensioner from the pension department; the exemption provided by the act protects the fund only while in the course of transmission to the pensioner. When the money has been paid to him it has "inured wholly to his benefit" and it is liable to seizure as opportunity presents itself. The pensioner, however, may use the money in any manner, for his own benefit and to secure the comfort of his family, free from the attacks of creditors, and his action in so doing will not be a fraud upon them.

In the case at bar the property was purchased in 1882, with pension money transmitted to and received by the pensioner several months prior thereto and in the mean time retained in her possession. Many years afterwards judgments were recovered against the pensioner and the property seized in the execution and sold. No objection having been raised to the regularity of the proceedings, we think the purchaser takes a good title, and we therefore direct judgment to be entered for the plaintiff.

The court below entered the following order:

And now, September 5, 1898, after consideration, and for the reasons set forth in the opinion filed herewith, it is ordered and directed that judgment be entered for the plaintiff and against the defendant for the premises described in the writ with six cents damages and costs.

S. J. McIntosh appealed.

*Error assigned* was in making the order for judgment to be entered in favor of plaintiff.

*Edward Campbell*, for appellant.—The reason and reasonable construction of the act of congress is with the decisions of the Iowa Supreme Court (Crow v. Brown, 81 Iowa, 344), and the court of appeals of New York: Bank v. Carpenter, 119 N. Y. 550.

The plain purpose of the act was to promote the comfort of the soldier; to secure to him the bounty of the government, free from the claims of creditors, and to insure him and his family a safe, though modest, maintenance, so long as their needs required it.

*A. F. Cooper* and *J. Q. Van Swearingen*, for appellees.—The question has been decided differently in different states, but the preponderance of authority is in harmony with the law of this state as laid down in Rozelle v. Rhodes, 116 Pa. 129.

The Iowa case cited by appellant's counsel is the result of a change in the personnel of the Supreme Court of that state, the question having been decided differently in a former decision in the case of Webb v. Holt, 57 Iowa, 712.

One of the leading cases on this subject is the case of Cranz v. White, 27 Kansas, 319; s. c. 41 Am. Rep. 408.    The decision is by Justice Brewer now of the Supreme Court of the United States.

OPINION BY RICE, P. J., May 18, 1899:

In order to reverse this judgment we must hold that the words of the act of congress " shall inure wholly to the benefit of such pensioner " mean that if he buys land or other property with the money such property is exempt from execution. No decision of our Supreme Court has gone so far as that, and not all of the cases from other states which hold that the protection of the statute may extend beyond the transmission of the money to the pensioner's hands go so far.    Some of them recognize the distinction between the conversion of it into property necessary for the maintenance of the pensioner and his family and the investment of it in trade, commerce or speculation.    We need express no opinion upon ·the validity of this supposed distinction.    We have before us the simple case of land purchased with pension money the title to which was taken in the name of the purchaser.    The court below in a well

considered opinion in which all the decisions of our Supreme
Court are reviewed held that it was not exempt, and in this
conclusion we concur. It is in entire harmony with the rulings
in Holmes v. Tallada, 125 Pa. 133, and Reiff v. Mack, 160 Pa.
265, whilst the construction which the defendants' counsel con-
tends for would be irreconcilable with the doctrine of Rozelle v.
Rhodes, 116 Pa. 129. We need not advance to meet other
questions until they arise.

Judgment affirmed.