# CASES

IN

# THE SUPERIOR COURT

OF

## PENNSYLVANIA

---

### Pentz *v.* First National Bank, Appellant.

*Pensions—Deposit of pension—Money in bank account—Commingling with other funds—Attachment—Exemption—Act of Congress of March 3, 1873, U. S. Revised Statutes, section 4747.*

Pension money which has been deposited in bank by the pensioner and credited to his general running account and mingled with his other funds, is his property, free from restrictions and stands on the same footing as any other money belonging to him, and as such it can be applied by the bank to the payment of his notes when due. It is not pension money "in the course of transmission" to the pensioner and is not entitled to the exemption provided for in the Act of Congress of March 3, 1873, U. S. Revised Statutes, section 4747.

Argued April 13, 1920. Appeal, No. 89, April T., 1920, by defendant, from judgment of C. P. Jefferson County, April T., 1919, No. 152, on verdict for plaintiff in the case of Joseph R. Pentz v. The First National Bank of Reynoldsville, Penna. Before PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Assumpsit to recover pension money deposited with a bank and applied to the payment of indebtedness of the pensioner. Before CORBET, P. J.

VOL. LXXV—1 (1)

The facts are stated in the opinion of the Superior Court.

Verdict for plaintiff for $836.75 and judgment thereon. Defendant appealed.

*Error assigned* was the charge of the court and refusal of defendant's motion for judgment non obstante veredicto.

*Raymond E. Brown,* and with him *M. M. Davis,* for appellant.—After the money was deposited in bank it was the property of the pensioner and was not entitled to the protection and exemption as provided in the act of Congress: Jardain v. Fairton Savings Fund Assn., 44 New Jersey Law 376; Spelman v. Aldrich, 126 Mass. 113; In re Stout, 109 Fed. 794; Martin v. Bank, (Vt.) 14 Atl. 649; Martin v. Hulbert, 60 Vt. 364; Faurote v. Carr, 108 Ind. 123; Cavanaugh v. Smith, 84 Ind. 380; Johnson v. Elkins, 90 Ky. 163; Kingwood v. Murdock, 48 W. Va. 301; Ferguson v. Russell, 140 Wis. 583; McIntosh v. Aubrey, 185 U. S. 122; Rozelle v. Rhodes, 116 Pa. 129; Elwyn's App., 67 Pa. 367; Minnick v. McDonald, 1 Pa. C. C. 191; Lancaster Co. Poor Directors v. Hartman, 9 Pa. C. C. 177; Kellogg v. Waite, 12 Allen 530.

*E. A. Carmalt,* of *Carmalt & Strong,* for appellee, cited: Rozelle v. Rhodes, 116 Pa. 129; Holmes v. Tallada, 125 Pa. 133; Reiff v. Mack, 160 Pa. 265; McIntosh v. Aubrey, 10 Pa. Superior Ct. 275; Floschow v. Werner, 131 Wis. 85; Eckert v. McKee, 9 Bush 355; Price v. Society for Savings, 64 Connecticut 362.

OPINION BY KELLER, J., July 14, 1920:

The plaintiff is a Civil War pensioner. He brought this action in assumpsit to recover from the defendant bank the sum of $792, representing eleven quarterly pension warrants of $72 each, deposited by him between

April 7, 1914, and October 10, 1917, to his general account in the said bank, and appropriated by it, as he alleged, together with some other funds in said account, to the payment of his promissory notes in the sum of $900 held by said bank. The court below refused the defendant's point for binding instructions and directed the jury to find a verdict for the plaintiff for the claim and interest. A rule for judgment in favor of the defendant non obstante veredicto was discharged and judgment was entered on the verdict.

The material facts were practically undisputed. From the testimony it appeared that the plaintiff had opened a general account with the defendant bank in 1893 and, except for a short interval, continued to keep such account until December 18, 1918, when it was closed, his book was balanced and his checks were returned. In this general account he deposited his quarterly pension checks along with bank dividends, interest coupons and other moneys. Sometime after 1909, he testified, he directed the managing official of the bank to write the word "pension" in his pass book in connection with his deposit of pension checks and thereafter, he said, with two exceptions the entry was so made. The bank officials denied any such request or direction and said the pension deposits, as well as others, were identified in the pass book for their mutual convenience. Even if accepted as true, this constituted the only evidence tending to earmark the deposits and there was no claim that pension moneys were not to be deposited in and credited to the plaintiff's general account or were not to be paid out on checks drawn against that account, which had been the practice for years. His checks, drawn on this general account, were not marked as payable out of pension or other particular funds, but all deposits, including pension checks, were mingled indiscriminately in one general account and checks drawn on that account were paid out of the general balance on hand. On January 22, 1914, the balance thus remaining was $1,068.32.

Between that date and March 2, 1918, when his notes were charged against the account, the pension moneys claimed in this action, amounting to $792, and other items aggregating $6,392.75, were deposited, totalling $7,184.75, and checks were drawn against the account amounting to $7,250.75, leaving a balance on the last mentioned date of $1,002.65. During the interval this balance was constantly changing and varied from as low as $17 on August 13, 1914, to as high as $1,553.64 on October 10, 1917. A careful examination of the plaintiff's account reveals that at several times (August 13, 1914, to September 7, 1914; July 2, 1917), the balance in bank was less than the aggregate of pension checks deposited to those dates. This recital shows that his deposits were so mingled together in one general account that their respective identities were lost; that there was no possible means of knowing against which items checks drawn by the plaintiff on the common fund were chargeable and that it was impossible to determine whether the balance remaining at any time was made up of pension checks or other items.

Section 4747 of the Revised Statutes of the United States (U. S. Compiled Statutes, Sec. 9080; Barnes's Federal Code, Sec. 8642), provides as follows: "No sum of money due or to become due to any pensioner shall be liable to attachment, levy or seizure by or under any legal or equitable process whatever, whether the same remains with the pension office or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

In construing this statute it was held by the Supreme Court of this State in the case of Rozelle v. Rhodes, 116 Pa. 129, that pension money received by such a pensioner and put into the hands of another for safe keeping, even though the identical money was to be returned, was subject to attachment execution in the hands of the bailee. In Aubrey v. McIntosh, 10 Pa. Superior Ct. 275, it was

decided that land purchased with pension money, the title to which was taken in the name of the pensioner, is not exempt from the lien of judgment and execution against such pensioner. In affirming this decision the Supreme Court of the United States said: "We think the purpose of Congress is clearly expressed. It is not that pension money shall be exempt from attachment in all of its situations and transmutations. It is only to be exempt in one situation, to wit: when 'due or to become due.' From that situation the pension money of the plaintiff in error had departed......Money received is not money due......We concur, therefore, with the learned judge of the Court of Common Pleas of Pennsylvania, that 'the exemption provided by the act protects the funds only while in the course of transmission to the pensioner. When the money has been paid to him it "has inured wholly to his benefit" and is liable to seizure as opportunity presents itself' ": McIntosh v. Aubrey, 185 U. S. 122. This construction agreed with that of Mr. Justice BREWER (then of the Supreme Court of Kansas, afterwards of the Supreme Court of the United States), in Cranz v. White, 27 Kansas 319, where a pensioner endorsed his pension checks and passed them in the usual course of business to the bank's official, by whom they were credited to his general account, and from time to time thereafter checked out a large part of such account, and it was held that the balance due on such general account was subject to garnishment. Mr. Justice BREWER held that the act of Congress did not create an exemption of moneys in the hands of a pensioner but simply protected such money in the course of transmission and said "It is evident that the defendant had acquired full and absolute control of his pension ......it had been passed to his general account and he had already used most of it. He had not simply deposited the drafts for collection; but he had sold them to the bank and the bank was his debtor for a balance upon his general account at the time of these proceedings."

In Holmes v. Tallada, 125 Pa. 133, which held that where a pensioner received a check for accrued pension, and endorsed and gave it to his wife, who drew the money and applied it to the purchase of real estate taking the title in her own name, the gift of the pension check to his wife was not a fraud upon his creditors and the real estate was not liable to seizure and sale for his debts, Chief Justice PAXSON said: "So here, if Jackson Tallada had deposited this money in his own name in bank, it might, under the authority cited [Rozelle v. Rhodes, supra], have been liable to attachment." Similar rulings have been made by the Supreme Court of New Jersey (Jairdain v. Fairton Saving Fund Assn., 44 N. J. Law 376); and of Vermont (Martin v. Hurlburt, 60 Vt. 364, 14 Atl. 649).

The learned judge of the court below ruled this case in favor of the plaintiff on the authority of Reiff v. Mack, 160 Pa. 265. We think they are clearly distinguishable on the facts. In that case the pensioner left one warrant covering accrued pension with the bank simply for collection. He opened no general account at the bank, and deposited no funds received from other sources to be mingled with the pension moneys when collected. It is true that the bank after collecting the check put the amount thereof to his credit and that he had drawn upon the same for part of it. But the balance remaining was wholly pension money still in the hands of the agent to whom he had given it for collection, which had never actually come into his hands, and it was on this ground, and not the theory elaborated by the learned judge of the court of common pleas, that the Supreme Court based its decision. In the present case the pensioner himself opened a general account at the bank in which for years he deposited to his general credit pension checks indiscriminately with other funds. Checks were drawn on this fund as a whole, not identifying the items against which they were to be charged, more in amount than the sum of all the pension checks. There

was nothing to identify the balance in bank as pension money, bank dividends, interest coupons or anything else. Under such circumstances, we are of opinion that the pension money had been transmitted to and received by the pensioner and had inured to his benefit within the meaning of the act of Congress, and that the balance thus remaining to his credit in the general account, made up of moneys received from many sources and no longer possible of being identified or earmarked was his property in the ordinary sense of the word, free from restrictions, and stood on the same footing as any other money belonging to him and could be applied by the bank to the payment of his notes when due.

The assignments of error are accordingly sustained, the judgment is reversed and is now entered for the defendant.