## Ruth v. Wellington et al.

*O. J. Tallman* and *H. P. Creveling*, for plaintiff.

*G. M. Lutz, W. A. Wert,* and *R. L. Stuart,* for defendants.

HENNINGER, J., June 13, 1938.—On March 27, 1934, Allentown Production Credit Exchange became a judgment creditor of William E. Schaffer, Sr., in the sum of $315, most of which is still owing. On June 26, 1936, William E. Schaffer, Sr., used the proceeds of his adjusted compensation bonds for the purchase of a house and lot in Zionsville, Pa., and took title thereto in the name of his three minor children. Thereafter, Allentown Production Credit Exchange caused execution to issue against this property upon its judgment, purchased the same at sheriff's sale, and thereupon conveyed the same for $420 to plaintiffs. Plaintiffs then brought an action in ejectment against the minor children of William E. Schaffer, Sr., naming as additional defendants the Wellingtons,

who are the tenants upon the property in question and who claim no title.

At the trial of the action, besides introducing evidence tending to show that Schaffer, Sr., was insolvent at the time of the purchase of the property, plaintiffs introduced into evidence the following paragraph from defendants' answer:

"7. That the said William E. Schaffer made title to said premises in the names of his three minor children not to hinder, delay or defraud any of his creditors and especially not the Allentown Production Credit Exchange, but he used his bonus money to pay for said premises for his own benefit and to secure the comforts of his family."

No evidence was offered by plaintiffs in contradiction of the allegation that the property was paid for out of bonus money, and as a matter of fact, plaintiffs' counsel conceded at side bar that they believed that the adjusted compensation bonds were cashed the same day that the money was turned over to the grantor of the premises.

At the close of plaintiffs' case, defendants rested and moved for a directed verdict for four reasons: (1) No showing of any title at any time in Schaffer, Sr., through whom plaintiffs' title must come; (2) plaintiffs not a party to sheriff's sale, hence not entitled to bring ejectment; (3) plaintiffs not injured by any fraud that might have existed; and (4) property purchased with assets exempt from levy for judgment creditor's claim, hence no fraud on it. While the first three points present interesting questions, the court felt the fourth point to be self-evident and directed a verdict for defendants on that point, and that alone has been argued in the motion for judgment non obstante veredicto and for a new trial. We need not consider the motion for judgment non obstante veredicto, for under no circumstances would plaintiffs have been entitled to a directed verdict in their favor. We, therefore, have the motion for a new trial for consideration.

The law of Pennsylvania concerning exemption of pensions revolves about four cases. The first in point of time is Rozelle v. Rhodes, Exec., 116 Pa. 129, in which a pensioner placed his pension money for safekeeping with a friend, and the Supreme Court held it was liable to attachment for his debts. Next is Holmes v. Tallada, 125 Pa. 133, in which a pensioner endorsed his pension check to his wife, who used it for the purchase of a property in her name, which the court held was not a fraud upon his creditors. The third is Reiff et al. v. Mack, 160 Pa. 265, in which Judge Endlich held that, where a pension check had been left with a bank for collection, the proceeds of the check were exempt from attachment until actually paid into the hands of the veteran. The opinion of Judge Endlich can be interpreted to mean that, where property can be identified as having been procured through the deposit or investment of pension money, it remains free from attachment, but the Supreme Court per curiam opinion affirming his decision points out that the funds, while available to the pensioner and in part drawn upon by him, had not actually reached his hands and were exempt from levy for that reason. If any doubt remained as to the nonexemption of property because purchased with exempt funds, it has been settled by Aubrey v. McIntosh et al., 10 Pa. Superior Ct. 275, from which the Supreme Court of Pennsylvania refused to allow an appeal and which was affirmed by the Supreme Court of the United States in McIntosh v. Aubrey, 185 U. S. 122. In that case a pensioner held pension money for several months and then used it for the purchase of real estate, taking title in the pensioner's own name, against whom a judgment was obtained 15 years later, and it was held the property was not exempt from levy simply because purchased with pension money. This principle has been sustained in Saxe, Guardian, v. Board of Revision of Taxes, 311 Pa. 545, Pentz v. First National Bank, 75 Pa. Superior Ct. 1, and Stein's Case, 118 Pa. Superior Ct. 549.

The narrow question to be decided in this case, therefore, is whether our case is ruled by Holmes v. Tallada, supra, in which title to property purchased with pension funds was placed in the name of the pensioner's wife, or by Aubrey v. McIntosh et al., supra, in which title was taken in the name of the pensioner herself. Both cases were decided under U. S. Rev. Stat. §4747, 38 U. S. C. 54, which provides:

"No sum of money due, or to become due, to any pensioner, shall be liable to attachment, levy, or seizure by or under any legal or equitable process whatever, whether the same remains with the Pension Office, or any officer or agent thereof, or is in course of transmission to the pensioner entitled thereto, but shall inure wholly to the benefit of such pensioner."

The exemption claimed in this case arises from the Adjusted Compensation Payment Act of January 27, 1936, 49 Stat. at L. 1099, providing for anticipation of adjusted service certificates by the issuance of bonds and provides in section 4:

"Such bonds . . . shall not be transferable, assignable, subject to attachment, levy, or seizure under any legal or equitable process and shall be payable only to the veteran or, in case of death or incompetence of the veteran, to the representative of his estate."

Plaintiffs call our attention to the difference in the nature of the funds and to the difference in the wording of the respective exempting legislation, but we consider neither distinction material.

The United States Government has the right to attach any conditions it pleases to the payment of pensions, insurance, or adjusted compensation, and it is immaterial that insurance and adjusted compensation may appear to be based upon a contractual relationship between the recipient and the Government while pensions may be considered a gratuity. As pointed out in Fisher's Estate, 302 Pa. 516, war risk insurance, though apparently contractual, also involved an element of gratuity on the part

of the Government through the generosity of its provisions. This is all the more true of adjusted compensation, for, in the first place there is not strictly any contractual relationship in the service of a soldier in time of war, and, in any event, the compensation originally provided for had been paid in full and, therefore, granting that the veterans were deserving of the additional adjusted compensation, there was no legal obligation on the part of the Government to provide it, and therefore the restrictions were not added to an already existing debt but were prescribed in the same legislation which created the obligation. While the Adjusted Compensation Payment Act, supra, in question, relating to the bonds, uses different language from that creating the original obligation (World War Adjusted Compensation Act of May 19, 1924, 43 Stat. at L. 121, 125, 38 U. S. C. 618), we must remember that the original act also created exemptions for the certificates, and that the later act, by anticipating payment of a non-interest-bearing certificate, conferred a new and gratuitous benefit and, therefore, justified an imposition of new and different restrictions.

The exemptions and restrictions in the act under consideration cover all the exemptions under the earlier pension acts and besides restrict the veteran from making any use of the bonds excepting to cash them personally and to use the proceeds as he sees fit, unhampered by creditors or assignees. The only possible distinction between this case and that of Holmes v. Tallada, supra, is that there the pension check was turned over to the grantor, while here the veteran himself cashed the bonds and paid the proceeds to the grantor. When we consider, however, that in the Tallada case the pension check, though exempt from levy, was negotiable, while in our case the bonds, besides being exempt from levy were also unassignable, any distinction entirely disappears.

To hold that the proceeds of the bonds, immediately upon their being cashed, became funds for the payment of existing debts and any other use of them fraudulent,

would defeat the very purpose of the safeguards placed upon the bonds for the evident purpose of securing to the veteran unrestricted and uncontrolled discretion as to the disposition of the proceeds of the bonds. The very restrictions themselves prevent the veteran from making any use of the bonds other than personally to convert them into cash. The act even goes so far as to exempt the bonds from any claims of the United States Government itself against the veteran. Surely if the donor waives any claims it may have, the act must be interpreted liberally to accomplish the object for the restriction.

In reaching this decision we are not going beyond principles of the Tallada case nor violating any of the principles of the Aubrey case. Considering the difference in the form of the Government security, the use of the fund for the benefit of the veteran's family was as direct in this case as in the Tallada case. The Aubrey case simply holds that the exemption of pension money does not apply to investments made with it. Applying the Tallada case, the immediate use made by the veteran of the proceeds of the bonds was in his uncontrolled discretion and beyond our power to question, hence his children are the undisputed and unrestricted owners of the premises in question, free of any claims on the part of his creditors. Applying the Aubrey case, the premises are no longer exempt from levy for the debts of the present owners, the children of the veteran, even though purchased with exempt funds. As plaintiffs' predecessor in title, however, had no claim against the children, it had no lien upon the property and acquired no title at the sheriff's sale.

It is unnecessary to decide how long a veteran may retain in his possession proceeds from adjusted compensation bonds without their becoming assets for the payment of his debts. Certainly the bonds by their very terms could have been held until maturity without becoming such assets. Where, as in this case, the bonds were cashed with a particular permissible objective in view and the proceeds were used for that purpose the

very same day, the proceeds of the bonds had not lost their character as exempt funds, and their use to provide a home in the name of his minor children, and hence beyond his ownership or control, was not a fraud on creditors.

Now, June 13, 1938, plaintiffs' motions for judgment non obstante veredicto and for a new trial in the above-captioned action in ejectment are denied and the rules therefor discharged at the costs of plaintiffs, and judgment may be entered upon the verdict upon payment of the jury fee.