# Trustees of State Hospital, &c., Appellant, v. Lycoming County.

*State hospital for insane—Care of indigent insane—Liability of county—Criminal insane—Act of May 1, 1907, P. L. 153.*

Under the Act of May 1, 1907, P. L. 153, amending previous statutes, and providing that indigent insane committed to the State hospitals for the insane are to be treated and cared for at the expense of the counties from which they came, to the extent of $1.75 per week, but all expenses above that sum, which are not to exceed $2.50 per week, are to be paid by the State, the term "indigent insane" is used without any limitation, and includes insane criminals and those charged with crime, who are indigent, as well as others.

Argued Jan. 20, 1913. Appeal, No. 2, May T., 1913, by plaintiff, from judgment of C. P., Dauphin Co., Commonwealth Docket, 1910, No. 52, in favor of plaintiff for amount admitted to be due, in case of Trustees of the State Hospital for the Insane at Danville, Pennsylvania, v. County of Lycoming. Before FELL, C. J., BROWN, MESTREZAT, ELKIN and MOSCHZISKER, JJ. Affirmed.

Assumpsit to recover expense of treatment and maintenance of insane persons. Before KUNKEL, P. J.

The case was tried by the court without a jury under the Act of April 22, 1874, P. L. 109. KUNKEL, P. J., filed the following opinion:

This action is brought in this court by virtue of the provisions of Section 5 of the Act of Assembly of April 8, 1861, P. L. 248, and Section 4 of the Act of March 27, 1873, P. L. 54, and through it the plaintiff seeks to recover the expense of the treatment and maintenance of certain insane persons committed to its care from the defendant county. By agreement of the parties trial by jury has been waived and the case submitted to us for determination pursuant to the provisions of the Act of

April 22, 1874, P. L. 109. The facts are not in dispute and from the statement and the written agreement filed in the case we find them to be as follows:

1. The plaintiff is a State hospital, established and incorporated by the laws of this Commonwealth for the care and treatment of the insane of the northern district of the State, of which the county defendant is part.

2. During the period between June 1, 1909, and December 1, 1909, and prior thereto, there were in the plaintiff's institution for care and maintenance twenty insane persons who were committed to it by the court of the defendant county, fourteen of whom were tried for crime and were acquitted on the ground of insanity and six of whom became insane while serving sentences of imprisonment, two in the industrial reformatory, three in the State penitentiary and one in the county jail. All were at the time they were adjudged insane and committed to the plaintiff's institution, and still are indigent persons.

3. The whole charge made by the plaintiff for the care and maintenance of these persons from the first day of June, 1909, to the first day of December, 1909, at the rate of $4.25 per week for each person, was $2,220. The county defendant paid to the plaintiff for the period mentioned the sum of $460, leaving unpaid the sum of $1,762.14, for which demand was made on February 2, 1910, and payment refused. To recover this balance this action was brought. Prior to June 1, 1909, of the $4.25 per week charged by the plaintiff for each person, the Commonwealth of Pennsylvania paid to the plaintiff $2.50 and the county defendant $1.75.

4. The defendant admits that there is due to the plaintiff the sum of $455.02, which represents the difference between the total charge of $915.02, at the rate of $1.75 per week for each person, for the period covered by this claim, and the sum of $460, which it has paid, but denies liability for any greater sum.

DISCUSSION.

It is conceded, as it must be, that the county defendant is primarily liable for the expense of caring for and maintaining those insane persons committed by its court to the plaintiff's institution. It has, however, the right of recourse against the estates of the persons themselves or against those persons or districts legally chargeable with their support. Act of April 14, 1845, P. L. 440; Act of March 31, 1860, P. L. 427; Act of April 8, 1861, P. L. 248; Act of May 14, 1874, P. L. 160. The last act upon the subject is that of June 25, 1895, P. L. 270. It declares that the county from which any person has been sent or committed by the court thereof to any hospital shall be liable to the hospital for his or her maintenance therein and the expenses connected therewith, and gives the right to the county to have full recourse to recover all expenses incurred from the parties or persons or poor districts chargeable therewith under the law. Boyle's Lunacy, 20 Pa. Superior Ct. 1; Com. v. Burton, 16 Pa. Superior Ct. 218. But, by the Act of May 1, 1907, P. L. 153, which is an amendment of the Act of May 21, 1889, P. L. 258, which amended the Act of June 13, 1883, P. L. 92, it is provided in Section 1,

"The expense of the care and treatment of the indigent insane, in the State hospitals for the insane, is hereby fixed at the uniform rate of one dollar and seventy-five cents per week for each person, including clothing, chargeable to the respective counties or poor districts from which such insane shall come; and the excess over said one dollar and seventy-five cents shall be paid by the State, but in no case shall said excess exceed two dollars and fifty cents per week for each indigent insane person."

It will be seen by this legislation that the counties have been relieved in part of the expense of caring for their indigent insane, their liability being limited to the uniform rate of $1.75 per week, for each person, while

the State has assumed any additional expenses, not exceeding the sum of $2.50 per week for each person.

It is contended, however, by the plaintiff, that the Act of May 1, 1907, does not embrace the insane persons for the expense of whose care and maintenance this action is brought, because they were charged with or convicted of crime or acquitted on the ground of insanity, that a distinction is made in the law between them and the indigent insane. We fail to find any such distinction in the legislation to which our attention has been called. The Act of May 8, 1883, P. L. 21, which provides for the supervision and control of hospitals and houses in which the insane are placed for treatment or detention, makes a different provision, it is true, for the admission to and discharge from hospitals of insane criminals, but makes no distinction with respect to the cost of maintaining them; indeed the act does not cover the question of maintenance at all. The difference of provision in the act was made necessary by the fact that the criminal insane are in the custody of the law and may not be given their liberty except by the courts which committed them. Nor do we think that the procedure for adjudicating the insanity of persons charged with crime shows any legislative intention to place them in a class distinct from other insane persons. On the proposition that the Legislature has distinguished between the indigent insane and criminal insane, the language of Section 10 of the Act of April 14, 1845, P. L. 440, extended to this plaintiff by the Act of March 27, 1873, P. L. 54, the act by which it was incorporated, may well be considered. The language in the section may have little significance, but if it has any, it is against the plaintiff's contention. The section provides that the expenses of persons charged with crime, adjudged to be insane, and committed to this plaintiff's care, "if in indigent circumstances," shall be paid by the county. There is in that section such a use of the term "indigent" as to indicate that an insane person may be indigent although criminal, and that

there is no distinction within the meaning of that statute.

It is admitted that all the persons for whose maintenance and care payment is demanded, although charged with or convicted of crime, were at the time of their recommitment, and still are, indigent persons. Manifestly by indigent persons is meant those who have not sufficient means to pay for their care and maintenance themselves, the cost of which therefore would fall upon the county or the poor districts in which they reside. The term "indigent insane" used in the statute is broad enough to cover all indigent insane persons, whether they be criminal or not. The purpose of the statute was to relieve the local districts from the full cost of maintaining and treating those in insane hospitals who were without means to pay for themselves. It is quite clear, therefore, that insane criminals and such insane persons as are charged with crime, who are indigent, fall within the term "indigent insane" and are not only within the letter of the statute, but also within its spirit. The legislature, so far as we are able to ascertain, has used the term "indigent insane" without any limitation, and we have no power to narrow its meaning. If we should do so we would thwart the manifest purpose of the law and cast the whole expense of caring for and maintaining the particular persons in this case upon the local districts, which it was the intention of the law in part to relieve.

### CONCLUSIONS OF LAW.

For the considerations stated we conclude:

1. That the defendant county of Lycoming is liable to the plaintiff for the maintenance and treatment of the twenty persons committed to its care from that county at the rate of $1.75 per week for each person and for no greater charge.

2. The plaintiff is entitled to recover from the defendant as follows:

During the period between June 1, 1909, and
December 1, 1909, twenty persons, at the
rate of $1.75 per week for each person, ..   $915.02
Less amount already paid, ...............    460.00

Balance, ...........................   $455.02
with interest from February 2, 1910, the amount to be
liquidated by the prothonotary.

Wherefore judgment for the amount so liquidated is
directed to be entered by the prothonotary in favor of
the plaintiff and against defendant, unless exceptions
be filed within the time limited by law.

Judgment was subsequently entered for the plaintiff
for $521.46.   Plaintiff appealed.

*Errors assigned* were various ruling on law and evidence and the refusal to give judgment for the plaintiff
for the full amount of its claim.

*William M. Hargest,* Assistant Deputy Attorney General, and *R. S. Ammerman,* with them *John C. Bell,* Attorney General, for appellant, cited: Com. v. Bennett,
15 W. N. C. 515; Danville State Hospital v. Bellefonte
Boro. Overseers of the Poor, 163 Pa. 175.

*W. C. Gilmore,* County Solicitor, and *Emerson Collins,* with them *W. K. Bastian,* for appellee, cited: Davidson Township's App., 68 Pa. 312; Com. v. Burton, 16
Pa. Superior Ct. 218; Boyle's Lunacy, 20 Pa. Superior
Ct. 1.

PER CURIAM, February 24, 1913:
The judgment is affirmed on the opinion of the learned
President Judge of the Common Pleas.