## Stein's Case.

Argued April 29, 1935. Be-
fore KELLER, P. J., CUNNINGHAM, BALDRIGE, STADTFELD,
PARKER, JAMES and RHODES, JJ.

*Vincent A. Baldauf,* for appellant.

*Hallock C. Sherrard,* with him *Charles F. Patterson,*
of *Patterson & Sherrard,* for appellee.

OPINION BY BALDRIGE, J., July 18, 1935:
Edmund J. Stein, a weak-minded person, is now and

has been for more than ten years a patient in a hospital at Washington, D. C., where he is maintained at the expense of the United States Government. Stein entered military service on August 7, 1918, and was discharged August 31, 1918. On March 8, 1921, the common pleas court of Allegheny County appointed Mrs. Minnie Stein, his mother, as guardian of her son's property, and, as such, she has received compensation and insurance benefits for his estate. He was found by the Veterans' Administration to be permanently and totally disabled because of service connection disability, and was awarded $100 per month compensation, and $57.50 per month war risk insurance benefits. His case was reviewed under Public Acts Nos. 2 and 78 of the 73rd Congress. On January 17, 1934, a special board of review determined that his disability was not service connection. His case was further reviewed by the Board of Veterans' Appeals at Washington on March 28, 1934, at which place and time Hallock C. Sherrard, Esq., a member of the Allegheny County Bar, appeared for the guardian, and presented witnesses on her behalf. No decision was rendered in this proceeding, due to the passage on the day of the hearing of Public Act No. 141 of the 73rd Congress. Under its provisions, the case was returned to the Pittsburgh office of the Veterans' Administration for determination.

The guardian petitioned the court of common pleas of Allegheny County, setting forth that compensation to her ward had been cut off, and that she had requested Mr. Sherrard, as her counsel, to make a trip to Washington and present her claim to the Board of Veterans' Appeals; that she agreed to pay him $100 for his services and expenses; that she has in her hands, as guardian, approximately $2,000; and prayed the court to make an order authorizing payment of $100 to Mr. Sherrard. The Veterans' Administration filed an answer to the petition, objecting to the payment of the

fee and expenses. After a hearing, the court made a decree, ordering the guardian to pay Mr. Sherrard the sum of $100 for legal services and traveling expenses.

The appellant concedes that this fee is not unreasonable, if such services were rendered other than in the prosecution of a claim before the Veterans' Administration.

The question involved, as stated by the appellant, is: Does the guardian, even though under an order of the court of common pleas, have the right to expend money in excess of that permitted under the acts of Congress and the rules and regulations of the Veterans' Administration for the prosecution of the ward's claim before the Administration?

By an executive order, dated March 13, 1933 (USCA 6098, p. 139), the President of the United States, under authority imposed in him under section 4 of Public Act No. 2 of the 73rd Congress, authorized the Administrator of the Veterans' Administration to recognize attorneys in the presentation of claims; to determine and pay fees for services rendered; and to prescribe rules governing entitlement to and the amount and mode of payment thereof. On December 7, 1933, the Administrator issued Veterans' Regulation No. 10, Instruction 3-A, providing, inter alia, as follows: "1. A fee not to exceed $10 in any original claim or $2 in any claim for increase may be allowed for the successful prosecution of such claim before the Veterans' Administration except where otherwise prohibited by law." The appellant insists that this regulation controls, and that the court exceeded its authority in ordering an expenditure of more than $2 for Mr. Sherrard's services. The learned court below held (1) that the attorney in representing the guardian at the Washington hearing was presenting neither an original claim nor a claim for increase, but was seeking to have a previous award reinstated, and, therefore, he did not come within the regulation above

quoted; (2) that it had authority to direct the guardian to pay the attorney a reasonable fee.

Strictly speaking, the services rendered were not within Regulation No. 10, above mentioned. We note in passing that Instruction 3-A indicates that the fees, which the Veterans' Administration is authorized to determine, are to be paid from the award which the attorney has aided in procuring. Section 15 therein provides: "At the time of allowance of the claim an award of the attorney's fee, if same is found due, will be made and paid by deduction from the pension allowed, but only to the attorney or agent of record at the time of allowance ......"

If we assume that the above statutes and regulations are applicable to all claims, whether for an original prosecution, increase, or reinstatement, the appellant is confronted with the more serious question, namely: Does either the Veterans' Administration or the United States have jurisdiction or control of the funds that were paid to a guardian, who was subject to the orders of the court of common pleas of Allegheny County? We think not. By the Act of May 28, 1907, P. L. 292 (50 PS §941 et seq.), the supervision and disbursement of money in the hands of this guardian come within the authority of the common pleas court of Allegheny County. It has ultimate and exclusive power over those matters. The lower court well said: "To hold that the Veterans' Administration has power to determine what portion of an incompetent's estate should be paid out for services of counsel in protecting his rights would be to allow that body to impeach the sovereignty of the Commonwealth of Pennsylvania, by invading the jurisdiction of its Courts and usurping their functions and prerogatives. Manifestly, the Veterans' Administration has not nor ever can attain such omnipotence."

We recognize that a fund received by a guardian is

in the nature of a gratuity to the ward, given by the United States in recognition of meritorious services, and is subject to certain regulations and restrictions imposed by the government; and statutes relating thereto should be liberally construed with a view to promoting their object. However, the general rule is that language relating to exemptions is to be strictly construed: Com. v. Sunbeam Water Co., 284 Pa. 180, 130 A. 405. Nor do we question the power of Congress to protect pension money, and make it inaccessible to the payment of attorney's fees, or exempt it from seizure by creditors, under our state laws, until it shall have passed into the hands of the pensioner: Reiff et al. v. Mack, 160 Pa. 265, 28 A. 699. But the laws and regulations relating thereto do not apply to money after it has passed into the hands of the beneficiary. The weight of authority sustains the proposition that when the transmission of pension money is ended, and the pensioner or his guardian has received it, the government's authority ceases.

McIntosh v. Aubrey, 185 U. S. 122, 125, 22 S. Ct. 561, 46 L. ed. 834, 838, was a case arising in this state. The court said: "We concur, therefore, with the learned judge of the court of common pleas of Pennsylvania, that the 'exemption provided by the act protects the fund only while in the course of transmission to the pensioner. When the money has been paid to him it has "inured wholly to his benefit," and it is liable to seizure as opportunity presents itself.' "

In State ex rel. Smith, Attorney General, v. Board of Comrs. of Shawnee County (Kans.), 294 Pac. 915, it was held that the payment of pensions or compensation funds to a guardian by the government does not leave such funds still in the hands or under the control of the government. The court there said: "...... the intervention of a guardian does not leave the pension funds still in the hands of the government ...... but,

when paid to the guardian, the title and possession have both passed from the government."

In the recent case of Spicer v. Smith, 288 U. S. 430, 77 L. ed. 875 (1933), the petitioner was a United States soldier in the World War who suffered mental incompetency and became entitled to receive war risk insurance and disability compensation from the United States. A guardian was appointed and the United States paid to him the installments due his ward. The money was deposited in a bank which became insolvent. The guardian claimed priority, under Revised Statute §3466, and demanded payment of his deposit in full. Mr. Justice BUTLER, delivering the opinion of the court, said: "The guardian, appointed by the county court, was by the laws of the State given the custody and control of the personal estate of his ward and was authorized to collect and receive the money in question. Ky. Stat. §2030. And unquestionably payment to the guardian vested title in the ward and operated to discharge the obligation of the United States in respect of such installments. [Citing cases]. The provisions for exemption, non-assignability and suspension of payments plainly imply the passage of title from the United States to the veteran."

In Pentz v. First National Bank, 75 Pa. Superior Ct. 1, we held that pension money deposited in a bank by the pensioner and credited to his general account was free from any restriction.

In Saxe, Guardian, v. Board of Revision of Taxes, 107 Pa. Superior Ct. 108, affirmed by the Supreme Court (311 Pa. 545, 166 A. 853), the question involved was whether a pension received from the United States Government by a guardian of an insane World War veteran, consisting of compensation insurance, maintenance and support allowance, payable to the veteran under the Federal World War Veterans' Act and invested in mortgages by the guardian, was subject to

personal property taxation. We sustained the contention that the veteran was not exempt from paying the tax, as exemption ceases when the transit of the money has ended.

No case has been cited, and we have found none, where the facts are similar to those before us; but we think the reasoning in the above-mentioned cases is applicable.

After giving this case careful consideration, we have come to the conclusion that when the money was given to the guardian, appointed by the court, it lost the impress of government money, and the control of the estate is wholly within the province of the common pleas court.

Decree is affirmed, at appellant's costs.