## Brusbard's Estate

*Joseph T. Coghlan, Jr.*, for claimant.
*John M. Dervin*, for Veterans' Bureau.

Kun, J., November 16, 1938.—The city filed a claim against the estate of the incompetent for reimbursement for his care and maintenance as an insane or weak-minded person. It appears that on June 9, 1922, while in the county prison in Philadelphia awaiting trial on a criminal charge, the incompetent was declared insane by a lunacy commission appointed by the court. On July 15, 1922, he was transferred to Farview State Hospital, and has been maintained there since at the expense of the City of Philadelphia. There is in general no question about the right of the city to be reimbursed out of the estate of such an incompetent in such circumstances. The general right to recover for maintenance of public charges is based on the Act of June 13, 1836, P. L. 541. See Directors of the Poor, etc., v. Nyce, etc., 161 Pa. 82. This general right has never been changed or limited, although there has been much legislation since in relation to special groups of indigents such as mental defectives. The latest two acts on the subject are The Mental Health Act of July 11, 1923, P. L. 998, and its amending Act of May 28, 1937, P. L. 973, which acts provide in great detail for the handling of such cases.

In Heine's Estate, 24 D. & C. 681, Judge Houck of Schuylkill County ruled in a case similar to the one before us that the county (or the institution in that case having the same right) was entitled to recover from the estate of the incompetent the expenses of his commitment and removal to the hospital (section 502 of The Mental Health Act, supra), and for his care and maintenance under section 507 of the act. The court there regarded the incompetent not yet convicted and sentenced as an "insane prisoner" because he happened to be in prison awaiting trial.

That it was not the intention of the legislature to have section 507 so understood is indicated by the fact that subsequently, by the amending Act of 1937, supra, section 507 was amended by striking out therein the word "prisoners", after the word "insane", making the sec-

tion read so as to apply only in the case of "an insane or mentally defective person undergoing sentence for a criminal offense", which of course excludes persons who may be in prison but who are awaiting trial. The section provides that in cases of persons undergoing sentence for a criminal offense, the expenses of the care and maintenance of such persons shall be paid "by the county liable for the maintenance of the patient in the prison, penitentiary, reformatory, or other penal or correctional institution from which he was transferred"; without provision for recourse in such cases by the county against the estate of such person for reimbursement; and this is quite consistent because inasmuch as the county has no right of reimbursement, under the law as it now exists, from the estate of a person undergoing sentence for a criminal offense while sane, there is no reason why his estate should be subject to such a charge if the person happens to become insane during the term for which he was sentenced. That this is limited, however, to such term is clearly indicated by the proviso at the end of section 507, that "if the term of sentence of any prisoner shall expire while he is still a patient in any hospital, such expenses shall thereupon become chargeable as provided in section five hundred and three of this act", which is the general authority for the recovery of the cost of maintenance of a mental patient "whenever" admitted to a hospital maintained wholly or in part by the Commonwealth, extending such liability from the property of the patient to persons liable under existing law for the support of the incompetent, on failure of which it is extended to the county, poor district, or municipality liable for the support of the incompetent; and in the last case there is the well-established right of such county, poor district, or municipality to recoupment from the estate of the incompetent, if any is found. The only exception is as now provided in section 507 of the Act of 1937, which applies exclusively to mentally defective persons actually "undergoing sentence for

a criminal offense", which of course does not apply to a person who is merely awaiting trial.

Legislation may advance some day to the point where the county will have a right to be reimbursed for the cost of maintenance of an insane person should he have an estate, even though the term of such care and maintenance be coincidental with the term for which the person may have been sentenced for a criminal offense. There is really no legitimate reason why any person should under any circumstances be maintained at public expense if he has an estate sufficient to defray such expense. It may be necessary to punish a person for a crime which he has committed by putting him in prison, but it does not follow that in such a situation there must be added to the public burden of maintaining correctional institutions the actual cost of maintaining such a person, whether sane or subsequently becoming insane, when it happens that he has an estate which, under other circumstances, had he not violated the law, would be quite ample to maintain him.

However, this interesting subject is a matter for the consideration of the legislature. As the law is now, the expenses for the care and maintenance in any mental hospital of an insane or mentally defective person undergoing sentence for a criminal offense must be borne by the county which would be liable for his maintenance and care in the prison from which the patient was transferred, without any apparent right of recourse against the estate of such person, at least up to the termination of the sentence, although even this limitation is questionable. See Trustees of State Hospital, etc., v. Lycoming County, 239 Pa. 402. It is perfectly clear, however, that with respect to insane or mentally defective persons who are not "actually undergoing sentence for a criminal offense" the estate of such person is liable over to the county for the cost of his maintenance, whether that person was adjudged insane and committed to the institu-

tion before trial, or continued as a mental defective in the institution after the termination of his sentence.

The next question before us is whether the fund in the hands of the guardian, which is derived from benefits given by the United States Government to a war veteran, is subject to the city's claim because of the provision in the Act of August 12, 1935, 49 Stat. at L. 607, sec. 3, creating such benefits:

"Payments of benefits . . . under any of the laws relating to veterans shall be exempt from . . . the claims of creditors . . . either before or after receipt by the beneficiary."

The Dauphin County court in In re Christian S. Bones, etc., 34 Dauph. 385, held that under The Mental Health Act, supra, the Commonwealth is a creditor as to its claims for maintenance and could not, owing to similar exemptions in prior veterans' acts, collect for maintenance of an incompetent prior to the date of the appointment of the guardian. However, counsel for the Veterans' Bureau in that case conceded the obligation of the guardian to pay for his ward's maintenance after such appointment. There is no sound basis for the Veterans' Bureau taking a different position now.

We do not agree with the dicta in that case that a guardian for a veteran, appointed by the court of common pleas, is " 'nothing more than an agent for the Government, and that the money in his hands is still in its control and management.' " A guardian is in no sense an agent for the Government (Federal or State) in respect to such a fund in his hands. On the contrary, he is the agent or bailiff of the court which appointed him (Riebel's Estate, 321 Pa. 145, 148), and such guardian is subject to the court's proper orders. Notwithstanding the limitation, in certain Federal acts creating such a fund, as to counsel fees, it was held that the court which appointed a guardian for the beneficiary had jurisdiction to fix such fees: Stein's Case, 118 Pa. Superior Ct.

549, affirmed in Hines, Admr., etc., v. Stein, Guardian, 298 U. S. 94.

It is perfectly clear to us that the purpose of the exemption in favor of war veterans is to protect them against improvident and ill-advised contracts and business transactions and engagements, and to some extent against "extortion, imposition, or fraud," as suggested by Mr. Justice McReynolds in Hines, Admr., etc., v. Stein, Guardian, supra. However, as to such elementary obligations as support of a veteran's children and alimony for the support of his wife, such funds have been held chargeable and not protected by exemption clauses under prior acts of Congress: Hollis v. Bryan et al., 166 Miss. 874, 143 So. 687; Arms' Committee v. Arms, 260 Ky. 634, 86 S. W. (2d) 542; In re Guardianship of Gardner, 220 Wis. 493, 264 N. W. 643. A fortiori claims for maintenance and support of the incompetent veteran self-incurred subsequent to the appointment of a guardian should be paid out of the veteran's funds: In re Murphy's Committee, 227 App. Div. 839, 237 N. Y. Supp. 448; In re Ferarazza's Estate, 219 Cal. 668, 28 P. (2d) 670; Lancaster County Poor Directors v. Hartman, 9 Pa. C. C. 177; In re Baynack's Estate, 29 Luz. L. R. Rep. 93 (1934).

It is obvious that the real purpose of the exemption in the act of Congress is to assure the use of such funds for the sole benefit of the veteran, from which it follows that the cost of maintenance and cure of a veteran, that is, anything that would properly fall within the category of necessaries, would be properly chargeable to such a fund in the hands of a guardian for an incompetent veteran. Even where a spendthrift trust has been created it is liable for necessaries furnished the beneficiary: Erisman, Trustee, v. Lancaster County Directors of the Poor, etc., 47 Pa. 509; Walter's Case, 278 Pa. 421; Hohenshieldt's Estate, 105 Pa. Superior Ct. 18. And this principle has been incorporated in the A. L. I. Restatement of

Trusts §157(*b*). As aptly put in the Erisman case, to hold otherwise would result in the unjust enrichment of the heirs and next of kin of such person, and "such a result is not to be thought of."

The evident purpose of the Federal legislation awarding war veterans certain benefits is to award it to them free of the possibility of having it diminished on account of any claims of creditors then existing. It is in respect to such claims that the fund is exempt from levy or attachment "either before or after receipt by the beneficiary." See in this connection Spicer v. Smith, etc., 288 U. S. 430, Pentz v. First National Bank, 75 Pa. Superior Ct. 1, and Saxe v. Board of Revision of Taxes, etc., 107 Pa. Superior Ct. 108. To make such an exemption effective, of course, the fund would have to be earmarked in some way. However, it is not necessary for us to pass on this point.

Giving the maximum effect to the exemption clause in the act of Congress under consideration we hold that the fund is not subject to the claim of the city for the cost of maintenance of the incompetent, which accrued prior to the time the fund derived from war veterans' benefits came into the hands of the guardian. When, however, the guardian was appointed it became his duty to care for his ward. Had the incompetent not been sent to the State institution, it would have been the duty of the guardian to petition the court for leave to have him sent to a private institution, and the court would have as a matter of course authorized the guardian to make the necessary expenditures from the fund for the care and maintenance of the incompetent at such institution. The circumstance that the incompetent happened to be awaiting trial on a criminal charge when he was found to be insane, and was thereupon sent to a State institution, we do not think offers a sound reason why the city, which has been compelled to maintain the incompetent at public expense, should not be reimbursed out of the fund which was created for the benefit of the incompetent.

The claim of the city is payable on the basis of the cost of his maintenance advanced by it for and on behalf of the incompetent from the date the fund came into the hands of the guardian, to June 1, 1937, after which date, under the Act of May 28, 1937, P. L. 973, the Department of Revenue of the Commonwealth was made the agent for the City of Philadelphia for collecting such maintenance charges.