## Mechlowitz Estate

*Leon M. Levy*, for petitioner.

*Joseph J. Wassell*, for Veterans Administration.

HOBAN, P. J., June 10, 1949.—The petition of Scranton Lackawanna Trust Company, guardian of Jacob Mechlowitz, a weak-minded person, asks for allowances to be paid to two adult daughters of Jacob Mechlowitz in the sum of $3,000 each, as dowries, in accordance with the custom of members of the Orthodox Jewish faith, to which all the parties belong.

Jacob Mechlowitz was married to Hattie Mechlowitz on July 10, 1917. Mechlowitz entered the military service during World War I and subsequently was adjudged as disabled due to a psychiatric affliction arising out of his war service. On June 8, 1925, he was admitted as a mental patient to the United States Veterans Administration Facility at Perry Point, Md., and has been and continues to be a patient in that institution since admission. On August 27, 1925, by appropriate proceedings in this court he was adjudged

to be a weak-minded person and his wife, Hattie Mechlowitz, was appointed his guardian. On July 22, 1931, Hattie Mechlowitz secured a decree in divorce in this court to September term, 1931, no. 1434. On November 9, 1931, after filing her first and final account as guardian, Hattie Mechlowitz was discharged as guardian of the estate of Jacob Mechlowitz and the Scranton Lackawanna Trust Company was appointed substitute guardian and has since continued to act as such.

Jacob and Hattie Mechlowitz were the parents of two children, Mrs. Hinda K. Freyer, who was born June 6, 1922, and Jean Sarah Mechlowitz, who was born February 12, 1926.

From the time of his admission to the veterans' hospital at Perry Point until 1947 Jacob Mechlowitz's condition was such that he was allowed periodic furloughs and visited his home and his various relatives in the City of Scranton, both before and after the divorce in 1931. During that period he frequently consulted with the officers of the trust company, his guardian; his pastor, Rabbi Henry Gutterman, an acknowledged and respected spiritual leader of the Orthodox Jewish community in this county, and he was present at the time his daughter Hinda was married in Scranton to Joseph Freyer in 1942. In the latter years of his visitation he expressed to the officer of the trust company supervising his estate, to Rabbi Gutterman and to his counsel, and subsequently by correspondence, his wishes that he could make provision for his daughters out of his estate for marriage portions or dowries. Since 1947 the condition of his health has been such that he has been unable to leave the hospital.

Analysis of the various accounts filed by the guardians and of the testimony of Frank T. Green, vice president of the Scranton Lackawanna Trust Company, the executive officer supervising his estate, indicates that since the estate came under guardianship in 1925 to

the time of the hearing there has come into the hands of the guardians for administration approximately $72,-000, of which amount slightly over $36,000 represents direct payment from the United States Veterans Administration by way of disability compensation and payments on United States Government life insurance, benefits for total disability. Since the majority of Jean Sarah Mechlowitz in February 1947 disability compensation payments have ceased, and the only moneys now included in the income of the estate from the United States Government are monthly payments of $40.63 from Government life insurance. The estate has other income accumulating at the rate of approximately $1,700 per year from disability payments on commercial life insurance and interest on investments. At the date of the hearing the balance in the estate amounted to $20,037.68, represented by $19,000 in United States savings bonds and the balance in cash. Expenses at the present time are negligible, since Mechlowitz is maintained at the hospital at Government expense and the only expenditures called for are the maintenance of a balance to his credit at the hospital of approximately $150 for minor comforts and conveniences.

From 1925 to February 1947 by authorized allowances under supervision of the court the guardians made appropriate provision for the expense of his household to the time of his divorce and for the support and education of his children until their majority.

This petition is based on the theory that the ancient Jewish custom of providing a dowry for daughters of marriageable age ought to be recognized by this court; that the wishes of Jacob Mechlowitz himself in this respect ought to be considered; that since the failure to make such provision for his daughters has been preying on the mind of Jacob Mechlowitz, thus adding to his mental illness, the allowance of the proposed dowries might have a beneficial therapeutic effect, and

that under present medical opinion there appears no probable chance of improvement in the mental condition of Jacob Mechlowitz such as would warrant his release from the hospital and require recourse to the estate for his support. Further, that the proposed payments would go to his natural heirs and could in no way impair the estate to the disadvantage of prospective beneficiaries.

All appropriate parties having an interest by relation to Jacob Mechlowitz have received a notice of these proceedings, and in accordance with the Act of April 24, 1929, P. L. 647, 20 PS §788, the United States Veterans Administration also received notice. The Veterans Administration has filed an answer in which it objects to the proposed allowance and questions its propriety because of the ample provision made for the support of the daughters during their minority and the possibility that the veteran may have to depend on this fund for his support. It is conceded that this court has proper jurisdiction over the entire fund subject to its administration and that approval of the guardian's distribution is entirely within the discretion of the court. The Veterans Administration is charged by law and regulation with the protection of the interest of incompetent veterans and quite properly files its answer in this case so that the court may be fully informed of all conditions which ought to enter into its consideration in deciding the matter.

It is apparent from an inspection of the figures cited above that approximately one half of the estate came from direct payments by the Government to the veteran because of his war incurred disability, and if there should be any point to the matter it could be conceded that such allowance as is here proposed could be taken from the portion of the estate derived from other than Government sources. However, in view of the decision in Stein's Case, 118 Pa. Superior Ct. 549, this consid-

eration is somewhat immaterial, as without question the court has control over the administration of the estate from whatever source derived.

Our only consideration, therefore, must be as to whether or not the proposed payment is in the interest of the incompetent person, since obviously the bare legal obligation of supporting his children ceased when they attained their majority.

Rabbi Gutterman, qualified by education and experience as an expert in matters pertaining to the Orthodox Jewish religion and family customs, testified that the provision for dowries for daughters of marriageable age among the Orthodox Jewish people was a wise, ancient and standing custom and considered as obligatory upon the parents. When asked what amount would be considered an appropriate dowry to be provided in the case of a father with an estate of $20,000, he testified that the sum of $10,000 would be considered an appropriate dowry. When marriages are the subject of family discussion and arrangement, the consideration of financial worth is an important one, leading to stabilization of marriage. Rabbi Gutterman testified that the failure to provide marriage portions for daughters very often meant the loss of opportunity for early and desirable marriages. I think it must be recognized that the stability of marriage and family life among the Orthodox Jews is noteworthy in this present day and is accountable in no small degree for the careful consideration prior to marriage of all factors involved, including the very practical one of finances.

Jacob Mechlowitz himself has desired such an arrangement for years, has stated in writing that he promised his daughter, Mrs. Freyer, to make such provision at the time of her marriage, and that he wants the same provision made for his unmarried daughter Jean. The question of his competency to make such a suggestion immediately arises. Dr. Elizabeth S. Ellis,

the doctor in charge of the ward at Perry Point at which Mechlowitz is a patient, by affidavits included in the record states that she discussed the matter fully with Mechlowitz, that he read the letter from the Scranton Lackawanna Trust Company, guardian, giving details of the proposed distribution, and that he appeared very anxious that these specific payments of $3,000 each be made to his daughters. Dr. Ellis concludes with this statement:

"I believe from my conversation with him that he is genuinely interested in his children, and has their future welfare at heart, and I also believe that if this distribution is ordered and he realizes that each of his daughters has received the payment of $3,000 which he desired made to them, that it will result in clearing his mind from a great deal of worriment on this subject, and that it possibly will have a beneficial result with reference to his present mental condition."

At the request of the court, the Veterans Administration secured a supplemental formal report as of May 11, 1949, from the staff of the Perry Point hospital. This report indicates that while psychiatric diagnosis remains unchanged since 1938 as dementia praecox, mixed type, the patient has a reasonable comprehension of the value of money. The report indicates that in conversations with him in reference to this proposed settlement on his children, Mechlowitz himself brought out that it was better to give these gifts now so that his children could enjoy them than to wait until after his death, when they would receive their inheritance and have to pay taxes on them. The medical opinion of the hospital authorities is that Mechlowitz will require hospitalization or some form of custodial care for the remainder of his life.

After a complete consideration of all the facts and circumstances of this case, we are of the opinion that while there is no legal obligation upon either Mechlo-

witz himself or the estate to make such allowances as here proposed, nevertheless the provision of dowries from the estate would be only to recognize a wise and salutary custom amounting to a moral obligation among the people of his faith, and that the knowledge that such provision has been made for his daughters would have a direct beneficial effect upon the mental condition of this patient and would result in no harmful impairment of the estate to foreseeable disadvantage of Jacob Mechlowitz himself. Accordingly, we make the following

### Order

Now, June 10, 1949, the Scranton Lackawanna Trust Company, guardian of the estate of Jacob Mechlowitz, a weak-minded person, is hereby directed to pay to Mrs. Hinda K. Freyer, daughter of Jacob Mechlowitz, the sum of $3,000, and to Jean Sarah Mechlowitz, daughter of Jacob Mechlowitz, the sum of $3,000, from the estate of Jacob Mechlowitz, by way of marriage portions or dowries.