**Commonwealth ex rel. Caler v. Caler**

*James B. Yelovich, District Attorney,* for plaintiff.

*Joseph B. Policicchio,* for defendant.

COFFROTH, *P.J.*, April 1, 1980—The issues before us are presented in three related cases above captioned: the first (100 Domestic 1977) on defendant's application for review of a support order and the department's petition for attachment of defendant for contempt, the second (1968 Judgment 1979) on plaintiff's motion for summary judgment against the garnishee (defendant's bank) in an attachment execution on defendant's bank deposit issued on a judgment for support arrearages, and the third (11 Incompetent 1979) on the petition of the domestic relations director for adjudication of defendant as an incompetent and appointment of a guardian for his estate.

The issues are these:

(1) Does the evidence warrant an adjudication of defendant as an incompetent?

(2) Are defendant's social security benefits, Veteran's Administration disability benefits and U.S.

Air Force disability retirement pay subject to attachment execution in the hands of defendant or in his bank account, on a support order? If so, is plaintiff entitled to summary judgment against the garnishee after filing its answers to interrogatories?

(3) Is defendant entitled to credit on the support order for the amount of a Veteran's Administration allotment for family support granted to plaintiff wife after the support order was made?

## HISTORY

The support order under review is for $250 monthly for defendant's wife (plaintiff) and six children, made May 18, 1977 (Shaulis, J.). Defendant was and is retired from the U.S. Air Force for disability; his entire income consists of social security benefits, Veteran's Administration disability benefits and disability retirement pay from the Air Force, totaling $811.80 monthly initially, now $719 monthly. The $250 monthly support order was made on the recommendation of the domestic relations department after departmental conference. The first payment was due June 1, 1977, and neither party filed an application for review of the order.

Defendant made the first two payments of $250 each due for June and July, 1977. On August 1, 1977 defendant telephoned the department concerning his support order and talked with a department clerk. The departmental log of the case shows the following entry by the clerk under date of August 1, 1977:

"Defendant said the plaintiff has applied for V.A. benefits. The defendant is receiving an Air Force pension. He said he also heard the plaintiff cancelled her social security check. Wanted to know if

he should make a payment now. Wants the matter checked into. Advised him not to make a support payment until things are settled. His mailing address is West Salisbury, Pa."[1]

Defendant testified that he paid nothing further on the order because he heard nothing further from the department in response to his telephone call, but the record shows that the department thereafter made numerous efforts to contact him and to make collection, beginning with a scheduled report conference for October 14, 1977 of which both parties were notified. Apparently defendant attended but so conducted himself as to produce the log entry: "Defendant is mentally disturbed, Mrs. Gardner [of] VA will attempt to help."

On February 2, 1978 the court issued an attachment to the U.S. Air Force upon defendant's disability retirement pay, which was refused on the ground that disability pay is not subject to garnishment.

On February 5, 1979 defendant was notified to appear at the department on February 13, 1979 at 2:40 p.m. For failing to appear, process for defendant's arrest was requested of and issued by the court on February 15, 1979 and was delivered to the state police for execution. On March 9, 1979 defendant was contacted by an officer who reported to the department that defendant was unable to comprehend the questions asked, had been in Somerset State Hospital several times, and was living in his car. On April 17, 1979 a departmental officer contacted defendant who also found defendant living in his car and defendant refused to speak with the

---

1. Department personnel have no authority to suspend or otherwise alter a court order, which can be done only by a judge of the court.

officer. The officer also learned in his investigation that plaintiff was then gainfully employed.

On May 25, 1979 defendant was taken into custody on the issued process and incarcerated in the Somerset County jail; at the same time, the state police filed a criminal complaint against defendant charging him with resisting arrest, aggravated assault and simple assault (278 Criminal 1979), based on events alleged to have occurred when the officers executed the process. Defendant failed or refused to obtain counsel notwithstanding his financial ability to do so, but on July 11, 1979 the court (Shaulis, J.) directed the public defender to represent him at the preliminary hearing.

On August 9, 1979 a hearing was held before the court to determine defendant's status on the domestic process at which time defendant refused to pay the support order. He was advised to obtain counsel, was assured of the sheriff's assistance in communicating with counsel, and was informed of the proper procedure for seeking a reduction in the amount of the order; the process was discharged and defendant remanded to the sheriff's custody for want of bail on the criminal charges.

On August 17, 1979 the domestic relations department filed a complaint for enforcement of the support order by attachment and for contempt and also filed a petition in the orphans' court division to adjudicate defendant incompetent and for appointment of a guardian for his estate. Defendant was brought before the court on those matters on September 24, 1979 when the hearing was continued until October 11, 1979. On the latter date defendant appeared without counsel and complained of the illegality and the amount of the support order, but he had filed no petition for modifica-

tion of the order; the court (Coffroth, P.J.) held that there was insufficient evidence of incompetency and continued hearing on the contempt complaint and the petition for guardian "with directions to the department to schedule a departmental review hearing at which you will interview both of the parties to determine the propriety of the present order, after which the department shall make a report to the Court." That review was ordered nothwithstanding that defendant had filed no formal petition for modification and apparently refused to do so.

On October 18, 1979 defendant went to trial before a jury on the criminal charges. The trial judge (Coffroth, P.J.) dismissed the charges of resisting arrest and aggravated assault after the evidence showed that the process issued was defective, but submitted the case to the jury on the charge of simple assault of which defendant was found guilty. On the same day, defendant's bail was reduced from $50,000 to $2,000, but defendant refused to give bail notwithstanding his ability to do so and remained incarcerated until he was sentenced on January 8, 1980 when, having served more than his minimum sentence, he was placed on parole.

On November 2, 1979 the domestic relations departmental conference or hearing was held, and a report to the court was made recommending against modification of the support order of $250 monthly, which was approved by the court on November 8, 1979 (Coffroth, P.J.).

On December 26, 1979 the district attorney as counsel for plaintiff entered judgment in the prothonotary's office against defendant for support arrearages in the amount of $7,250 (as of December 2, 1979), issued a writ of attachment execu-

tion on defendant's bank account in Gallatin National Bank of Meyersdale as garnishee and served interrogatories on the garnishee (1968 Judgment Docket 1979). The interrogatories were duly answered by the garnishee, and the district attorney has moved for judgment against the garnishee which motion is now pending. It later appeared that defendant had, prior to service of the attachment writ, withdrawn from his bank account more than $5,000 with which he purchased the mobile home in which he now resides.

On February 5, 1980 a conference between counsel and the court (Coffroth, P.J.) was held in chambers concerning the issues in the cases at which defendant's counsel asked the court to hear defendant on the issues he had previously raised, nothwithstanding that he had filed no timely application for review of the November 8, 1979 order dismissing his contentions and refusing modification of the order, and to stay all other issues. The district attorney agreeing, the court granted defendant's request and fixed February 14, 1980 as the hearing date when the hearing was held, after which the issues now pending were taken under advisement.

## DISCUSSION

It is apparent from the recited history that this case has unusual aspects, stemming from defendant's bizarre and recalcitrant behavior. The domestic relations department had taken that as evidence of defendant's mental incompetency, but the record does not support that conclusion and the petition for guardian must be denied. We were uncertain, however, whether defendant's behavior stemmed from difficulty in comprehending his legal status

and obligations or from stubbornness, and we granted the departmental review of the propriety of the present order, notwithstanding defendant's failure and refusal to file a proper application for modification, out of an abundance of caution that we do him justice, and for the same reasons we granted this court review notwithstanding that he failed and refused to file a proper application for review. Commonwealth counsel agreed to the review under the circumstances.

At the final hearing, defendant performed quite rationally, evidenced a good understanding of the matters involved and advanced his contentions in understandable terms. Although that presentation was substantially aided by the presence of counsel, and it appears that defendant has some deep fixations which do not readily yield to explanation, we are now satisfied after having observed him at that hearing and after this full review of the record that he is not incompetent insofar as his participation in the various legal proceedings in this court are concerned. Instead, it now seems apparent that all along defendant has felt completely immune from judicial attempts to fasten support liability upon him and to reach his assets which come from United States governmental sources as disability pay or benefits (as he now contends and which we shall deal with in this opinion), and that the apparent but unexpected success of the attachment of his assets has finally convinced him of the seriousness of these proceedings and that a more sensible and less intractable approach on his part is now in his best interest.

Had we clearly realized this before, special dispensations would not have been granted, but we have committed ourselves to this review and will

keep that commitment, with this caution to defendant: hereafter he will be expected to comply with proper procedures in this court.

## I. Attachability of Defendant's Income and Bank Account:

Defendant claims that all of his income, consisting of social security disability benefits, Veteran's Administration disability benefits, and U.S. Air Force disability retirement pay, are exempt by law from attachment. It is first important to note that the attachment in this case was not made by writ issued to the payor to attach the moneys in the hands of the government, but by writ issued to defendant's bank where he has deposited the funds received from those sources. We also note that the attachment is on a judgment for support arrearages, not for future support payments as they become due periodically, although as a matter of fact defendant's income checks continue to be deposited in the account and thereby become subject to the attachment as after-acquired property: Pa.R.C.P. 3111(b) and 9 Goodrich-Amram 2d §3111(b):2.

There are statutory provisions limiting attachability of some of the benefits which defendant receives. But before looking at those provisions, we should first be aware of some general principles which govern their interpretation:

(1) A distinction must be drawn between a debt owed to a creditor, and the obligation of family support and maintenance. The debtor-creditor relationship rests upon consensual or contractual understanding: Lohr Estate, 3 D. & C. 3d 307, 311, 34 Somerset 88, 91 (1977). The family support obligation does not arise from any express or implied consensual undertaking, but by operation of law from

the legal status of marriage and parenthood; accordingly the relationship between support obligee and obligor is not that of debtor and creditor: Com. ex rel. Mishler v. Mishler, 36 Somerset 414, 425 (1979).

(2) Attachment (or garnishment) is a means of execution upon a judgment by seizing intangible property of the judgment debtor which is in the hands of a third person. Such attachment execution was unknown at common law and is purely statutory; accordingly, the extent of the right of attachment execution depends entirely upon statute. See 3 P.L.E., Attachment §§1 and 2; 7 C.J.S., Attachment §§2 and 5.

There are several well established canons of statutory construction which apply particularly to statutory provisions exempting designated property from attachment execution:

a. Statutory provisions exempting pension and similar benefits from attachment apply only to the moneys before and during transmission to the payee, not after their receipt by him, absent contrary provisions in the statute. See 35 C.J.S., Exemptions §43a(2) and (3).

b. Where the statute does exempt benefit moneys from attachment after receipt and while in the control of the payee, the exemption does not extend to property acquired with the funds unless the statute so provides: 35 C.J.S., Exemptions §43a(2) and (3); Holmes v. Tallada, 125 Pa. 133, 17 Atl. 238 (1889); Com. v. Thompson, 22 D. & C. 2d 236, 57 Lanc. 167 (1960).

c. Statutory provisions exempting property from attachment are generally held to apply only to claims arising from the debtor-creditor relation and have no application to claims for family support absent clear statutory language to the contrary.

The very purpose of such exemptions is to assure the flow of funds for family support, unimpeded by creditors' collection proceedings, and that purpose would be defeated if the beneficiary of the funds could exclude his dependents from access thereto by attachment: See Cartledge v. Miller, 457 F. Supp. 1146 (S.D. N.Y. 1978); Com. ex rel. Mangrini v. Mangrini, 263 Pa. Superior Ct. 366, 398 A. 2d 179 (1979); Com. v. Berfield, 160 Pa. Superior Ct. 438, 51 A. 2d 523 (1947); Anno., Enforcement of Claim for Support against Exemptions, 54 A.L.R. 2d 1422; 35 C.J.S., Exemptions §83; 16 P.L.E., Exemptions §11.

Attachment of money or property of the obligor in the hands of private third persons must be distinguished from attachment thereof in the hands of the Federal or state government, because those governments possess sovereign immunity from suit absent a statute consenting to such proceedings. As to the Federal government, it has been held that its sovereign immunity extends to attachment proceedings naming it as a party garnishee. See Applegate v. Applegate, 39 F. Supp. 887 (E.D. Va. 1941); 91 C.J.S., United States §176 at note 52. As to the state government of Pennsylvania, our court has held that sovereign immunity does not extend to garnishment proceedings: Com. ex rel. Yanosky v. Yanosky, 33 Somerset 172, 178-180 (1976) (Shaulis, J.), attachment of workmen's compensation benefits payable by Pennsylvania Department of Labor and Industry; contra, Com. ex rel. Charlton v. Lawson, 2 D. & C. 2d 637 (1954). Both the United States and Pennsylvania governments have expressly consented to certain attachment proceedings for family support. The Federal act is Act of January 4, 1975, 88 Stat. 2351, sec. 101(a),

effective January 1, 1975, 42 U.S.C.A. §659, which provides in relevant part as follows:

"§659. Enforcement of individual's legal obligations to provide child support or make alimony payments—United States and District of Columbia to be subject to legal process

"(a) Notwithstanding any other provision of law, effective January 1, 1975, moneys (the entitlement to which is based upon remuneration for employment) due from, or payable by, the United States or the District of Columbia (including any agency, subdivision, or instrumentality thereof) to any individual, including members of the armed services, shall be subject, in like manner and to the same extent as if the United States or the District of Columbia were a private person, to legal process brought for the enforcement, against such individual of his legal obligations to provide child support or make alimony payments."

The Pennsylvania statute is the Public Welfare Code of June 13, 1967, P.L. 31, as amended by the Act of July 9, 1976, P.L. 993, 62 P.S. §432.8, which provides in relevant part as follows:

"§432.8 Garnishment of wages of commonwealth employes

"Notwithstanding any other provision of law moneys due from or payable by the Commonwealth of Pennsylvania (including any agency, instrumentality or authority thereof) due to any individual shall be subject, in like manner and to the same extent as if the Commonwealth of Pennsylvania were a private person, to legal process brought for the enforcement against such individual of his legal obligations to provide support for a child or spouse."

See also Editor's Note to Yanosky, supra; compare Judicial Code, 42 Pa.C.S.A. §5110 (limited waiver of sovereign immunity).

It should be noted that the Federal statute is a limited waiver of immunity from attachment, since it applies only to moneys payable *"the entitlement to which is based upon remuneration for employment,"* whereas the state statute authorizes attachment of *"moneys due"* without restriction. Since we are dealing entirely with Federal moneys in this case we deal only with the Federal statute.

It is apparent from the language of the Federal statute that it pertains only to attachment proceedings against the Federal government while it still holds the funds, and has no application to attachability of the funds in the hands of the beneficiary or his depository. The immunity adheres to the government, not to the funds. Accordingly, since the writ of attachment in this case is not against the Federal government, we are not concerned with whether the moneys here involved are "based upon remuneration for employment," and the validity of this attachment depends entirely on the exemption statutes applicable to each benefit, which we shall now examine. See Harris v. Harris, infra, footnote 4.

A. Social Security:

The statutory exemption of social security benefits from execution is found in the Act of August 14, 1935, 49 Stat. 624, as amended, 42 U.S.C.A. §407, and provides as follows:

"407. Assignment

"The right of any person to any future payment under this subchapter shall not be transferable or assignable, at law or in equity, and none of the moneys paid or payable or rights existing under this

subchapter shall be subject to execution, levy, attachment, garnishment, or other legal process, or to the operation of any bankruptcy or insolvency law."

Nothing in this statute exempts social security benefits from execution upon a judgment for family support; accordingly, the general rule that the exemption does not apply to family support judgments and decrees is applicable. See Huskey v. Batts, 530 P. 2d 1375 (Okla. 1974); Brown v. Brown, 32 Ohio App. 2d 139, 288 N.E. 2d 852 (1972); Texas Baptist Children's Home v. Corbitt, 321 S.W. 2d 610 (Tex. 1959). Consequently, defendant's social security benefits in his possession or in his depository are subject to attachment on his support order.[2]

B. Veteran's Administration Disability Benefit:

The statutory exemption of V.A. benefits is found in the Act of September 2, 1958, 72 Stat. 1105, 38 U.S.C.A. §3101(a), which provides as follows:

"§3101. Nonassignability and exempt status of benefits

"(a) Payments of benefits due or to become due under any law administered by the Veteran's Administration shall not be assignable except to the extent specifically authorized by law, and such payments made to, or on account of, a beneficiary shall be exempt from taxation, shall be exempt from the claim of creditors, and shall not be liable to attachment, levy, or seizure by or under any legal or

---

2. Since the social security exemption statute applies only to the "right of any person to [receive] any future payment" and contains nothing which protects such benefits from execution after they are received by the beneficiary, apparently even a creditor may levy thereon in the hands of the beneficiary or his depository. See Com. v. Thompson, 22 D. & C. 2d 236, 57 Lanc. 167 (1960).

equitable process whatever, either before or after receipt by the beneficiary. . . ."

Since this statute contains no provision making it applicable to support judgments, the general rule that the exemption does not apply to such judgments is applicable. See Dillard v. Dillard, 341 S.W. 2d 668 (Tex. 1960); Gerold v. Gerold, 6 Or. App. 353, 488 P. 2d 294 (1971); compare Hannah v. Hannah, 191 Ga. 134, 11 S.E. 2d 779 (1940), and Stirgus v. Stirgus, 172 Miss. 337, 160 So. 285 (1935), former statute. As stated in the Annotation in 54 A.L.R. 2d, supra, at 1437:

"With very few exceptions the cases hold that payments arising from service in the Armed Forces, or property acquired with such payments, though exempt as to the claims of ordinary creditors, are not exempt from a claim for alimony, support, or maintenance, or from distribution in a divorce action."

Accordingly, defendant's V.A. benefits in this case are subject to attachment on his support order.[3]

C. Air Force Disability Retirement Benefit:

We find no statute exempting armed services retirement benefits, whether for ordinary retirement (6 C.J.S., Armed Services §§114-115) or for disability retirement (id. §§116-120), from execution or attachment. Consequently, defendant's Air Force disability retirement pay in the possession of him or his depository is subject to attachment, at least on a

---

3. This V.A. exemption statute expressly applies to the moneys "before or after receipt by the beneficiary," but that extension is applicable to creditors only, not to judgments for family support to which the exemption is inapplicable.

family support order. See Annotation, 54 A.L.R. 2d at 1437, quoted above.[4]

D. Conclusion:

From the foregoing, it follows that all of defendant's income and property in his hands or possession and all money in his bank account from whatever source derived, are subject to this court's writ of execution, by levy or garnishment, upon this court's order against defendant for family support.

## II. Amount of Support Order

Defendant's primary contention respecting the amount of the support order is that he should have credit for the amount of the V.A. allotment ($124 monthly) which was granted to plaintiff in June or July, 1977 after the support order was made on May 18, 1977, and which caused a reduction in defendant's income from $811.80 to $719. His argument is that plaintiff's receipt of that allotment in effect increased the support order beyond what the court intended and without court approval.

---

4. Of course, sovereign immunity may be a problem under 42 U.S.C.A. §659(a), quoted previously in the opinion, as respects attachment of disability payments in the hands of the government. In Harris v. Harris, 40 N.C. App. 26, 252 S.E. 2d 95, 97 (1979), the court states that payments received by a *retired regular officer* from the military service for *retirement* are based on "'remuneration for employment'" within the meaning of 42 U.S.C.A. 659(a), supra, and are therefore attachable in the hands of the government on a support order, but that payments to a *retired reserve officer* for *retirement,* and *disability payments* to a *retired officer,* are not based on "'remuneration for employment'" and are therefore not attachable in the hands of the government. Compare Jizmerjian v. Air Force, 457 F. Supp. 820 (D. S.C. 1978), sustaining garnishment of regular retirement pay of a retired regular Air Force officer under 42 U.S.C.A. §659(a), supra, for family support.

There is a certain logic in defendant's reasoning, and many courts have recognized the propriety of some credit for such subsequently granted allotments, depending on the circumstances. See Anno., Right to Credit on Support Payments for Social Security or Other Governmental Payments, 77 A.L.R. 3d 1315. But there are two reasons why no such credit should be given here.

First, at the time the initial order was made defendant was paying utilities for the home of $123 monthly, and the order was made on the assumption that defendant would continue those payments. He has not done so, and the V.A. allotment merely replaced the deficiency.

Second, credits for subsequently received allotments are proper only if the support order, when added to the allotment and to all other sources of income for the dependents, was adequate to supply "comfortable maintenance and support" for them as the law requires. See Com. ex rel. Beeman v. Meerbaugh, 38 Somerset 27 (1980), at footnote 8. Here, plaintiff's income for seven persons from all sources (social security, V. A., her later part-time earnings of $420 monthly, and including the amount of the support order) totalled approximately $1,087 monthly, leaving approximately $460 for defendant alone for his own maintenance, an apportioning of available resources not unfair to defendant. Moreover, a support order of $250 monthly is far below our guidelines for a wife and six children (60 percent); that percentage of defendant's income would have required an order of $431 monthly.

Changed circumstances have presently improved plaintiff's financial position: two of the six children have become self-supporting, the social security allotment (although temporarily reduced for a period

of time because of the reduction in the number of dependent children) is now $274 monthly (effective January, 1980), instead of $194 as it was in 1977, and the V.A. allotment is $187 up from $167, although plaintiff's earnings remain substantially the same ($420) as does defendant's income ($711). Thus, plaintiff's total income is $1,130 monthly for herself and four children (including the support order), while defendant's income remains at $711 (less the support order). Because of these changed circumstances and their relative effects, we shall reduce the support order by $25 monthly effective October 11, 1979 when the review order was made, without affecting arrearages accumulated prior to that date which will have to be paid. The support of the veteran himself is also of high priority. See Dilijonas Estate, 16 D. & C. 2d 142 (1958).[5]

5. Under the civil procedural support law, a support order may be made effective from the date of filing the complaint (or petition for modification): Judicial Code §6706(a); see also Com. v. Deffenbaugh, 34 Somerset 245, 248, footnote 1 (1977). Retroactivity is discretionary with the court: Baumgardner v. Baumgardner (No. 2), 29 Somerset 222 (1974); compare Com. ex rel. Eppolito v. Eppolito, 245 Pa. Superior Ct. 93, 101, 369 A. 2d 309 (1976).

Arrearages may be remitted under appropriate circumstances, which is also a form of retroactive adjudication, as expressly authorized by the Act of June 19, 1939, P.L. 440, sec. 1, 17 P.S. §263; Com. ex rel. Fryling v. Fryling, 220 Pa. Superior Ct. 68, 70-71, 283 A. 2d 726 (1971). Remission of arrearages was impermissible at common law, absent statutory authorization: Com. ex rel. Chrstos v. Chrstos, 156 Pa. Superior Ct. 238, 240, 40 A. 2d 165 (1944). The Act of 1939 was repealed by the Judiciary Act Repealer Act (JARA) of April 28, 1978, P.L. 202, sec. 2, 42 P.S. §20002[1217], without re-enactment. But we think the essentials of the 1939 act remain in effect, having been "received into and become part of the common law of this Commonwealth," under 1 Pa.C.S.A. §1978, as provided in JARA, 42 P.S. §20003(a). See Com. ex rel. Beeman v. Meerbaugh, supra, at page 34, and footnote 8.

## ORDER

Now, April 1, 1980, it is ordered and decreed as follows:

1. The petition for appointment of guardian filed to No. 11 Incompetent 1979 is denied. Costs on the county.

2. The support order entered to No. 100 Domestic 1977 is reduced from $250 monthly to $225 monthly, effective as of October 11, 1979. Costs on defendant.

3. Plaintiff's motion for summary judgment against Gallatin National Bank garnishee, pursuant to Pa.R.C.P. 1035, is granted, provided that no further action shall be taken until after conference with and further order of the court. Costs on defendant.

4. The department's petition for attachment for contempt is continued until after the conference between counsel and the court referred to in paragraph 3 above.

•   •   •

Conference: April 8, 1980.

## ORDER

Now, April 18, 1980, it is ordered and decreed pursuant to agreement of the parties as follows:

1. Gallatin National Bank, Meyersdale, Pa., garnishee in the attachment execution proceedings (No. 1968 Judgment 1979) shall pay to Domestic Relations Department of the Court (P.O. Box 612, Somerset, Pa. 15501), one-half of the present balance in the attached bank account or accounts of defendant Bruce E. Caler, and one-half thereof to defendant Caler; the writ of attachment execution and the judgment entered thereon against the gar-

nishee are hereby released to the extent of the present balance in said account or accounts so paid out.

2. The writ of attachment execution and the judgment entered thereon shall continue to bind all moneys hereafter deposited in said account, which shall be disbursed by the bank as follows: from the first moneys deposited each month, the sum of $300 monthly to domestic relations department, and the remainder of said deposited moneys to defendant Caler, until further order of the court.

3. The first moneys received by domestic relations department shall be applied as follows: $225 thereof to payment of the present support order for April, 1980, the balance thereof to payment of defendant's present monetary obligations in the criminal court, and the balance thereof, if any, to support order arrearages. Subsequent moneys received by the department shall be applied first to the payment of the current support order, then to the payment of the unpaid balance in the criminal court if any, and then to support order arrearages until fully paid and discharged. After full payment of all criminal court obligations and support order arrearages, the amount payable by the bank to the department shall be reduced from $300 monthly to the amount of the then current support order (now $225) and the department shall so notify the bank.

4. The bank is entitled to deduct from all moneys disbursed under this order to domestic relations department, two percent thereof for clerical work and expense involved in complying with this order. See Judicial Code, §6709(4). The bank shall have no obligation respecting the application of moneys disbursed by it to domestic relations department.

5. All further proceedings in the above captioned cases are stayed until further order.

6. Costs on defendant.